# CHARLESTON.

STRADER ET AL., VS. GOFF ET ALS.

VALENTINE STRADER AND MARY HIS WIFE, WILLIAM SEXTON AND SARAH ANN HIS WIFE, JACOB HINKLE AND MARGARET HIS WIFE, NATHANIEL BURNETT AND PROVIDENCE HIS WIFE, ISAAC P. TETIO AND REBECCA ANN HIS WIFE AND LORENZO D. STRADER, PLAINTIFFS IN THE ACTION AND DEFENDANTS IN ERROR, *against* PHILIP GOFF, CHARLES HICKS AND ARCHIBALD MYERS, DEFENDANTS IN THE ACTION AND PLAINTIFFS IN ERROR.

1873.
January
Term.

Decided February 24th, 1873.

## SYLLABUS.

A declaration in ejectment may be amended by the insertion of a count in the name of new plaintiffs.

The action, as to such plaintiffs, will be deemed to have commenced at the time of the service of the new count, with notice on the defendants; or if it be not served, then at the time of their pleading to or other recognition of the count.

When, in ejectment, the jury find in favor of the plaintiffs named in one count, but fail to find as to other plaintiffs, these may confess in favor of the defendants; and thereupon judgment may be rendered in their favor against the latter plaintiffs.

1873.
January
Term.

When an instruction asserts a proposition apparently erroneous, and is given and excepted to, the judgment should be reversed, though it is not shown whether, in fact the instruction prejudiced the appellant or not.

When land was reported by a commissioner of delinquent and forfeited lands to a circuit superior court, and by the commissioner and the court treated as forfeited and accordingly sold, and a deed was made by the commissioner to the purchaser, the proceeding is *prima facie* evidence of the forfeiture; but it may be rebutted by proof.

When the title of any person so treated as the owner of land is shown to have passed from him to another person, before the alleged delinquency or omission that occasioned the supposed forfeiture, or another collateral title is shown to·have vested in·such other person, the proceeding ceases to be *prima facie* evidence of forfeiture of such title; and,.unless other evidence make it necessary for the owner to prove the payment of the taxes, he need nŏt do so. But the purchaser at the commissioner's sale, may prove the forfeiture of such title, or adduce *prima facie* evidence of the forfeiture, that will make it necessary for the other in turn, to rebut it.

A person who is not a party in an action of ejectment, but granted land in controversy, with a covenant of general warranty, to one who is a defendant, cannot, in his own name, maintain a motion to set aside a verdict in favor of a plaintiff.

On a motion to set aside a verdict because of information, accidentally received, that evidence regarded as conclusive, exists and can probably be attained, the affidavits or other sworn evidence of the informants should be adduced; or its absence accounted for. An affidavit, of a party to the action, or a third person, as to such information, is not sufficient.

When there are two judgments in·an action of ejectment—one in favor of some of the plaintiffs against the defendants, and another in favor of the defendants against others of the plaintiffs, and the defendants appeal from the former judgment, it may be reversed and the other may remain undisturbed.

· The case is sufficiently stated in the opinion of the Court.

*Boggess & Bennett* for Plaintiffs in Error.

*Brannon* for Defendants in Error.

HOFFMAN, Judge.

In July and August, 1867, Valentine Strader and others, Plaintiffs, the Appellees here, caused copies of a declaration in ejectment . for a tract of land in the

1873.
January
Term.

Strader et al.
v.
Goff et al.

county of Gilmer, containing seven hundred and twenty acres, with a notice subjoined, to be served on Philip Goff and others, Defendants, the Appellants here.

At Rules in the Clerk's office of that county in the latter month, the Plaintiffs mentioned, filed the declaration, with proof of service of the notice. At the same time, the Defendants pleaded the general issue—that they were not guilty of withholding the premises, and the Plaintiffs mentioned joined issue. On the 3rd of August, 1869, the Plaintiffs moved the Court for leave to file an additional count making new · Plaintiffs; the Defendants objected to the filing of the count, to have any other effect than a new suit instituted on that day ; and the Court deeming that, as to the new parties, it would have only such effect, permitted the Plaintiffs to do so ; and accordingly they filed a new count, in the name of the original Plaintiffs and William L. Jackson and others, against the Defendants, for the same land ; the Court stating that the statute of limitation might be determined on the trial. At the same time the Defendants pleaded the general issue and the Plaintiffs joined therein.

In April, 1871, the issue was tried and the jury found for Strader and others, the original Plaintiffs, the land mentioned in the declaration, and that they had an estate in fee simple therein, and found for them one cent damages. The Defendants moved to arrest the judgment, because the jury did not find for or against Jackson and others, the new Plaintiffs in the amended declaration ; but the Court overruled the motion : and thereupon the latter Plaintiffs, by leave of the Court, confessed judgment in favor of the Defendants. And the Court rendered judgment that Strader and others, the original Plaintiffs, recover against the Defendants the premises found for them and costs ; and that Jackson and others, the new Plaintiffs, who confessed, recover nothing, and that the Defendants recover against them costs.

The Defendants appealed against Strader and others, the original Plaintiffs, from the judgment in favor of the latter against the former.

The counsel for the Defendants, the Appellants. in this Court, urge that the amendment of the declaration; and the failure of the jury to find between Jackson and others and the Defendants, the permission to Jackson and others to confess, and the judgment of the Court in favor of Strader and others; are errors, for which the judgment should be reversed.

For many years, the remedies for the determination of title and recovery of possession of real estate, were so complicated as often to thwart the pains of the lawyer and baffle the right of the citizen. In Virginia, the writ of right was simplified by statute, and the action of ejectment in the name of a feigned lessee and ejector, was in many respects convenient, however peculiar. But reforms were effected in other states, that, with modifications, were approved in Virginia. Accordingly at the revisal, in 1849, the chapter on the action of ejectment in the Code of Virginia was adopted, and, at the revisal in 1868, it was, with very slight changes, copied into the Code of this State.

This law seems to have been carefully devised to meet every contingency that forethought could anticipate. Though, doubtless, it does not reach such perfection, it contains many new provisions of great pratical convenience.

It is often very difficult for the actual claimant of land to determine in whom the legal title has been, or is vested, and in whose name an action should be instituted. This was heretofore a source of much embarrassment. In the writ of right the general rule that requires unity of interest in plaintiffs, did not allow the joinder of demandants who had not been jointly seized, but were in legal contemplation strangers. In the new action of ejectment, however, a singular innovation is made

1873.
January
Term.

Strader et al.
v.
Goff et als.

in this respect. It is provided that several persons may be named as plaintiffs, jointly in one count and separately in another ; and that the verdict shall be for the plaintiffs, or such of them as appear to have right to the possession, and that the judgment shall be according to the verdict. Code of Virginia, Chapter 135, Code of West Virginia, Ch. 90, ss. 10, 23, 29. Thus, different persons, all or some or one, supposed to have right, may be united in the same action, and the question of right will be determined and settled, between all and each of them and the defendants, and so, by implication, between themselves.

The statutes allowing amendments to declarations and other pleadings, apply as well to actions of ejectment as to others. They generally permit the insertion or addition of any such matter as would originally have been proper. Code of W. Va. Ch. 125, ss. 12; Ch. 131 ss. 8. When one or more plaintiffs have been named in the declaration in ejectment, and it is afterwards discovered or supposed. that other persons may have the right, the same reason that authorizes the joinder of several different persons, not claiming jointly or in common, in an original declaration, admits the introduction of new plaintiffs by an amendment. When this is done, all may proceed in the one suit; the same surveys and depositions, thereafter made and taken, and the same evidence, may be used, as far as competent and relevant ; and the rights of all the parties may, at one time, be determined.

As, however, the law requires the action to be commenced by the service of a declaration and notice, so, when new plaintiffs are joined, the action, as to them, will be deemed to have commenced at the time of service ; or if there be no service, but the amendment be filed and pleaded to, or otherwise' recognized by the defendant, then, from the time of the pleading or other sufficient recognition.

The plea of the general issue by the Defendants, en-

tered at one time to the original declaration and at a subsequent time to the amendment, is tantamount to one plea to the entire declaration.

Whether, however, the pleas be entire or separate, the verdict may be for a part of the plaintiffs, and, as to the others, for the defendants. When some of the plaintiffs have right and others have not, the law directs this Code of West Va., Ch. 90 ss. 23, 24. But when the verdict is for those of the plaintiffs who appear to have right to the possession of the land, and, by the judgment, they recover it against the defendants, why does the law require a finding in words as to the other plaintiffs, in favor of the defendants, for the same land?

Whatever the reason may be, when the jury finds for a part of the plaintiffs against all of the defendants, and the court renders judgment for them accordingly, and the other plaintiffs confess and thereupon the court renders judgment against them in favor of the defendants, this is equivalent to a verdict and judgment as to these plaintiffs in favor of the defendants. Certainly this omission of a formal finding, and substitution of a confession of the fact on which the judgment is founded, cannot prejudice any party.

From different parts of the record, that need not be here transcribed, it would seem probable that the commissioner of delinquent and forfeited lands, had reported to the circuit superior court, four tracts of land of 1000 acres each or two tracts of 2000 acres each, granted by the Commonwealth to Samuel Young, were either delinquent or omitted from the commissioners books in his name, and were therefore forfeited, and under an order of the court sold and purchased by Edward H. Jackson, through whom the Plaintiffs claimed; and that the Defendants sought to show that the lands had been conveyed by Young before the sale. While, perhaps, this inference is not sufficiently sustained to authorize a decision rested on its verity, it presents the only con-

1873.
January
Term.

Strader et al.
v.
Goff et als.

ceivable case at all indicated by any part of the record, to which the instructions given and excepted to, could properly apply. It is therefore stated here for illustration.

At the trial, the Defendants moved the Court to instruct the Jury as follows:

"A report made by a commissioner of delinquent and forfeited lands of the forfeiture of a tract of land, the order of the Court approving the same and ordering a sale, the sale and confirmation thereof do not pass lands within the boundaries thereof not forfeited, but the parties must be left to the strength of their respective titles."

The Court gave this instruction, but added a qualification as follows:

"But such forfeiture, being *prima facie* conclusive against all persons, the burden of proof is upon the defendants claiming adversely, that the title under which they respectively claim did not pass to the Commonwealth by such forfeiture."

And the Defendants moved the Court to instruct the jury as follows:

"The record of the sale of the two thousand acre tract to O'Conner and Brown is not sufficient to establish the forfeiture thereof, so as to entitle the Plaintiffs in this cause to read the said record in evidence in the cause for that purpose."

The Court refused to give the instruction, but in lieu of it, instructed the jury as follows:

"If the jury believe from the evidence that all four of the tracts of land patented to Samuel Young, and laid down on the plat of Milton Norris, were forfeited to the State, and that the land sold by the commissioner of delinquent and forfeited lands to Edward H. Jackson, lies wholly within said four tracts; then the deed to said Jackson by said commissioner would pass all the right and title of the Commonwealth, derived by forfeiture, to the land within the boundary specified in the deed of

the commissioner, unless it appear from the evidence, that the Commonwealth had parted with her title prior to the sale to Jackson."

The Defendants excepted to the qualification annexed to the first of these instructions, and to the giving of the last instruction.

Other instructions were asked by the Defendants and given.

It has been held repeatedly, that when a bill of exceptions is so indefinite as not to show whether an instruction or evidence was proper or not, the judgment should be reversed. Barrett & Co. vs. Tazwell, 1 Call, 215; Beatie vs. Tabb's Adm'r., 2 Munf. 254; Brook vs. Young, 3 Ran. 106; Thompson vs. Cumming, 2 Leigh, 321; Bowyer vs. Clement, 4 Leigh, 1. On the other hand, however, it has been decided that when evidence is offered and rejected, or an instruction is asked and refused, and the bill of exceptions fails to show its relevancy, the judgement will not be reversed. Rowt's Adm'x. vs. Kyle's Adm'x., 1 Leigh, 216; Fitzhugh's Ex., vs. Fitzhugh, 11 Gratt., 300. This, as a general rule, when the instruction is refused, is doubtless correct. But when the instruction given, is on its face uncertain or ambiguous, it may tend to the promotion of justice, to reverse the decision. However this may be, when an instruction given and excepted to, is apparently erroneous, the judgment must be reversed, though it be not shown whether it prejudiced the party who excepted, or not. Chapman & Co. vs. Wilson & Co., 1 Rob. 267.

The qualification of the first instruction indicates, that when upon a report of a commissioner of delinquent and forfeited lands and order of a circuit superior court, land was treated as owned by one person, and as his forfeited and therefore sold, if, subsequently, it be shown, that previous to the forfeiture, the title had passed from such owner to another person, or, by an older grant from the commonwealth, the actual title had vested in such

other person ; though "neither this owner nor his title was mentained in the report or by the court; yet the proceeding would be such evidence of the forfeiture of this title as to devolve on its owners the burden of proving that it was not forfeited. There was no other. valid title that could have passed to the Commonwealth by forfeiture, before the proceedings referred to. The instructions imported that, because a spurious title of an assumed owner had been sold as mentioned, any true title in another should be presumed to have been forfeited and vested in the State. This, it is deemed, is not the proper construction of the law in question.

From the beginning of the current century to the present time, the conflicting titles and claims to the lands that constitute a large portion of the territory of this State, have prevented the settlement and improvement of the country, and paralyzed the energy and contravened the prosperity of our people, to a degree inconceivable to those who have not especially observed the cause and its effect. In, and since the year 1831, the legislature, the judiciary, and lately the convention that framed the constitution, have from time to time, devoted much careful study and determined effort to the removal of this calamitous evil. It is earnestly hoped that their work will ere long be vindicated by results beneficent and gratifying. The judiciary, in the construction of these laws, should look to two great objects: First the security of the owner not in fault—especially when he has improved the land ; and secondly the settlement of titles.

The act passed in 1837, on the subject in question, made it the duty of the circuit superior court for each county west of the Alleghany mountains, to appoint a commissioner of delinquent and forfeited lands; and . the duty of the latter to report to the court the delinquent and forfeited lands in his county, together with all the information which he might be able to procure

34

in relation to the title; and the duty of the court, on the return of the commissioner, to direct him to make sale of the lands, in the same manner in all respects, as in the case of other lands directed to be sold under decrees of the courts; and prescribed the time, place, and notice of sale. It required that the commissioners should return a report to the court and to the Auditor; and when the purchrser should have paid the whole of the purchase money, that the court should direct the commissioner to convey to the purchaser, all the interest of the Commonwealth in the land. The act made it the duty of the attorney for the commonwealth to appear and represent the interest of the Commonwealth in all matters pertaining to the sales and other proceedings. Acts 1836–'37, Ch. 8, ss. 2, 3, 4, 5, 6, 7, 8, 9.

The act passed in 1838, on the subject, authorized a judge in vacation to order sales. It provided that upon payment of all the purchase money, the commissioner might receive it, and thereupon the purchaser should be entitled to his deed. It authorized and required the Auditor to pay to the original owner of any land sold by the commissioner, the proceeds whereof should be paid into the treasury, the residue, after having deducted all taxes, damages, costs, or charges, incurred in the sale of the land. Acts 1838, Ch. 8, ss. 5, 6, 7, 8, 9, 10, 13, 14.

These acts contained provisions as to the time within which the commissioners should complete their reports. But the act of 1840, repealed the latter of these provisos. Acts 1839–'40, Ch. 7, s. 1.

The act of 1842 on the subject, declared that by the sales, if the Commonwealth had acquired title to the same land by forfeiture in different names, all the right and title of the Commonwealth, should be transferred and vested in the purchaser.—Acts 1841–'42, Ch. 13, 13, s. 2.

The act of 1816, made it the duty of the commission-

ers to complete their reports that year. Acts 1845–'6, Ch. 6, s. 1.

It was decided by the Supreme Court of Appeals of Virginia, that the proceeding under these statutes was a judicial one; that when complete it could not be impeached for irregularity, but, with the commissioner's deed was conclusive as to the transfer of the forfeited title from the Commonwealth to the purchaser; and that even under the acts passed before that of 1842, the proceeding was effectual to pass, not only the apparent title mentioned in the report and order of the court, but any other title actually forfeited. Smith vs. Chapman, 10 Gratt., 445.

It was lately decided by the Supreme Court of Appeals of this State, that when land was reported by the commissioner to have been owned by the original grantee, and forfeited for his failure to have it entered on the books of the commissioner of the revenue and charged with taxes, and thereupon by the order of the court was sold, and a deed was made to the purchaser; while in fact, as was shown in an action of ejectment, the grantee had conveyed the land before the omission that occasioned the supposed forfeiture, and the actual owners had been charged with and paid the taxes; the judicial sale did not conclusively establish the forfeiture of the land or effect the transfer of the title of the owner to the purchaser at the judicial sale. Twiggs et al. vs. Chevallie et als., 4 W. Va., 463.

While these decisions settle the more important principle embodied in these acts, they do not reach the question now presented for adjudication.

Under the law, the commissioners reported all the facts that reached the cognizance of the court. By these alone the judicial intelligence was enlightened. When they were false or incomplete, the action of the court was consequently erroneous. All the facts became a part of the record. It is only when the title of any

person was not discovered or not reported by the commissioner, and therefore not before the court, that it does not appear in the proceedings. In such a case, the order to sell the land affords no intrinsic evidence of the forfeiture of such unnoticed title.

The purchaser has knowledge of the proceeding under which he acquires his claim, and, when it is questioned, may ascertain what was asserted or assumed as the foundation of the sale, and inquire whether it be reliable or not. On the other hand the owner has no notice of the proceeding in which his land was treated as forfeited and sold to a stranger.

The actual forfeiture of the land constitutes an indispensable part of the title under which the purchaser claims. When the land appears not to have been owned and forfeited as indicated by the report and order, but to have been owned by a person not mentioned in the proceeding, there is no reason why the purchaser should not be required to show the forfeiture of the latter title, in order to demonstrate that it passed from the owner to the Commonwealth, and thence, by the sale, to himself.

The more reasonable construction of this subject may be embodied in these propositions :

When land was reported by a commissioner of delinquent and forfeited lands, and by him and the court treated as forfeited, and accordingly sold, and a deed was made by the commissioner to the purchaser, the proceeding is *prima facie* evidence of the forfeiture; but it may be rebutted by proof.

When the title of any person so treated as the owner of the land, is shown to have passed to another person before the reported delinquency or omission that occasioned the assumed forfeiture ; or another collateral title is shown to have vested in such other person ; the judicial proceeding is not *prima facie* evidence of the forfeiture of such title ; and, unless other evidence make it necessary for the owner to prove the payment of taxes, he

need not do so. But the purchaser at the commissioner's sale, or claimant through or under him, may prove the forfeiture of such title, or may adduce *prima facie* evidence of the forfeiture that will make it necessary for the other in turn to rebut it.

While this rule will be convenient and harmonize with the usual practice in cases involving like questions, it is not perceived that it will in any way, thwart the policy of the legislation on this subject.

According to the statutes and decisions before mentioned, no matter how many titles and claims were in fact forfeited, all passed by the judicial sale and commissioner's deed to the purchaser.

Of course when an apparent title, junior to the title mentioned in the commissioner's report, with the payment of taxes, is relied on to attract and appropriate a forfeited title, the payment of taxes must be proved.

Some of the instructions asked and some given indicate, more or less clearly, that a record of the circuit superior court, relative to the forfeiture and sale mentioned in the last instructson given and excepted to, transcribed above, was read on the trial; though no part of the record shows the fact distinctly. If such a record was read the last instruction excepted to, was correc. If not it was erroneous.

After the verdict was rendered, but before the motion to arrest the judgment, Jonathan M. Bennett moved the Court to set aside the verdict and grant a new trial; the Court overruled the motion; and Bennett excepted. On the motion the latter filed his affidavit, which is as ollows:

"Jonathan M. Bennett this day made oath that he is the vendor of 184 acres of land, which he conveyed with covenants of general warranty to Charles Hicks, a defendant in the action of ejectment in the name of Valentine Strader and others against said Hicks and others; that since the trial of this cause was commenced, during

the present term of this Court, he accidentally discovered evidence which he has reason to believe, and does believe, will be material evidence for him in maintaining the possession of his said vendee, and those claiming under him, to the said 184 acres. of land. This affiant further says that the evidence consists in the existence of a conveyance from Samuel Young before the forfeiture or sale of the land claimed by the Plaintiffs in their action aforesaid, to other parties ; and that he is informed and believes that the said aliences caused said land to be duly entered with taxes, and that no forfeiture thereof accrued in the names of such aliences. That this affiant believes that the land so conveyed will cover the entire claim of the Plaintiffs, and that the same will operate as an entire and full defence to the claim of the Plaintiffs. And this affiant knew nothing of the existence of said conveyances until after the trial of this cause commenced, and by the most reasonable diligence he could not have ascertained their whereabouts, but by purely accidental means he discovered that said deeds and payment of taxes were facts, as he is informed and believes, and that the deeds aforesaid were in the possession of a gentleman residing in the State of Ohio ; and he believes that they may be rendered available upon a future trial. He further makes oath and says that said Hicks has left the land and the State of West Virginia, and is making no part of the defence, by reason, this affiant supposes, of covenants of warranty aforesaid."

It does not appear that the defendant Hicks gave notice to Bennett or consented to his making defence. Therefore, it is not necessary to consider whether, upon a notice by a defendant to his warrantor, or, with the consent of the former, the latter may defend the action. The statute makes no provision for the admission of a warrantor as a party. If he were a defendant, no judgment could be rendered in favor of the plaintiff or warrantee, against him, or in his favor against any one. The

1873.
January
Term.

Strader et al
. v.
Goff et als.

defendant to the action is the party immediately interested, and should make or control the defence. If he improperly suffers an eviction, he can not recover against his warrantor.

Bennett's affidavit does not show that the Defendants, or either of them, used due diligence to discover the evidence referred to. The affidavit indicates that during the trial, information had been given by some one or more persons, of the existence of deeds in Ohio, that would operate as a defence to the Plaintiffs' claim. It would seem that the evidence of the informants as to this fact might have been readily obtained. If it could not, the reason should have been shown. The affidavits of those who have given the information, when attainable, should be taken and filed, or their evidence under oath, in some form, should be produced. Their information not under oath, is not sufficient to warrant the setting aside a verdict.

Only under special circumstances, when justice seems to demand it, will the discovery of evidence, during or after a trial, constitute a reason for setting aside a verdict. Nuckols Adm'r. *vs.* Jones, 8 Gratt., 267 ; Brown *vs.* Speyers, 20 Gratt., 296.

The plaintiffs Jackson and others, against whom, on their confession, judgment was rendered, are not parties to the appeal. That judgment is not before this Court. But it was correct. As has been noticed the law allowed separate findings and separate judgments. The one may be reversed and the other remain undisturbed.

For the reasons stated, the amendment of the declaration, and the confession and judgment thereon, against the parties confessing it, were proper; and if there had been no erroneous instruction, the overruling the motion to set aside the verdict, and the judgment in favor of the plaintiffs Strader and others, the Appellees, against the Defendants, would have been proper: But the qualification added to the first instruction given was

1873.
January
Term.

Strader et al.
v.
Goff et als.

erroneous.    Therefore the judgment last mentioned should be reversed, with costs, the verdict set aside and a new trial of the issue between the parties thereto directed ; and the cause should be remanded to the Circuit Court for further proceeding.

HAYMOND, President, and PAULL and MOORE, Judges, concur in the foregoing opinion and points decided.