# CHARLESTON.

BOWMAN v. DEWING, et al.

Submitted June 6, 1892.—Decided November 26, 1892.

| 37 | 117 |
| s50 | 446 |
| 37 | 117 |
| .64 | 587 |

1. EJECTMENT—EXCLUSION OF EVIDENCE—PRACTICE.

In an action of ejectment on a motion to exclude all of the plaintiff's evidence the motion should be overruled if any of that evidence tends in an appreciable degree to show in the plaintiff a right to recover the land claimed.

2. EJECTMENT—ADMISSIBILITY OF EVIDENCE—ASSESSOR'S BOOKS—PRACTICE.

In such an action the plaintiff introduced in evidence the books of the assessors of the county wherein the land lay, to prove that from 1829 to 1842, inclusive, the land in question was omitted from the land books of said county. The tendency of this evidence was to show that the land was forfeited to the state, and it should not have been excluded from the jury.

3. EJECTMENT—ADMISSIBILITY OF EVIDENCE—PRACTICE.

In November, 1842, the commissioner of delinquent and forfeited lands for Randolph county sold, among a number of other tracts, a tract of one thousand acres, under the erroneous impression that it had been forfeited under a patent issued to one Ely. The plaintiff in his said action of ejectment claimed title through the purchaser at said sale, and introduced evidence tending to show that the land in controversy, when sold and conveyed by said commissioner, was actually forfeited under another title and in a different name. This evidence was pertinent, and should not have been excluded, because, under the Act of March 30, 1837, and amendatory acts, under which said commissioner proceeded, his deed conveyed all the interest vested in the commonwealth by forfeiture, no matter in whose name or under what title the land was forfeited.

*L. D. Strader* and *W. B. Maxwell* for plaintiff in error cited 10 Gratt, 445; 6 W. Va. 257.

*W. T. Ice* and *E. D. Talbott,* for defendants in error cited Code (1891) p. 628; 21 W. Va. 568; Id. 233; 14 Gratt. 501.

LUCAS, PRESIDENT:

This was an action of ejectment instituted on the 20th day of September, 1889, in the Circuit Court of Randolph county, by W. W. Bowman against Dewing & Son, defendants, to recover a tract of land lying on the east side of Shaver's fork of Cheat river. By a disclaimer, and otherwise, the controversy became narrowed down to a tract of one thousand acres, which in a certain survey is described as "Lot No. 1." After the plaintiff had introduced his testimony and rested his case, the defendants, having objected to the testimony of the plaintiff generally and *en masse,* moved the court to exclude it from the jury, which the court did. Thereupon the jury found a verdict for the defendants, and the plaintiff moved for a new trial; but the court overruled the motion, and gave judgment according to the verdict. The plaintiff below now prosecutes this writ of error.

The bill of exceptions sets out all of the plaintiff's evidence, both documentary and verbal. A survey was made by the county surveyor, and the facts in reference to location and identification are not in dispute. The plaintiff produced two grants from the commonwealth—one to William Ely, assignee, *etc.*, bearing date October 14, 1795, and one to William Bowyer and William Breckinridge, for a tract of the same dimensions (one hundred thousand acres.) The plaintiff claimed title from the former grant to Ely; twenty eight thousand acres of that tract having been forfeited, and sold by David Goff, commissioner of delinquent lands, in November, 1842. It is admitted that lot No 1, the tract in controversy, though sold as forfeited under the Ely survey, was really not in said survey, and never was forfeited under that title, but in fact it was included in the latter survey patented to Bowyer and Breckinridge.

The court having excluded all of plaintiff's evidence, the question for us to determine is whether any of that evidence tended in any appreciable degree to show in the

plaintiff a right to recover the tract claimed. If so, the judgment was wrong, and must be reversed; otherwise, it must be affirmed.

The first question presented is this: The land having been sold as forfeited under one title, but being actually forfeited under a different title, did the conveyance by the commissioner vest in the purchaser all the title which the commonwealth had? If so, the evidence of the plaintiff certainly tended to show a right to recover.

The plaintiff introduced evidence that the books of the assessor of the county showed that the said Bowyer and Breckinridge grant was not entered in the name of the said patentees on the land books of the county, from 1829 to 1842, inclusive. The tendency of this evidence was to show that the land was forfeited to the State.

On the 27th of February, 1835, the general assembly of Virginia passed an act, from the preamble of which we are led to infer there was then no existing law which the legislature regarded as operative to produce forfeiture for failure of the owner to enter on the land books. The portions of said preamble and act material now to be considered are as follows:

"And whereas it is known to the general assembly that many large tracts of land lying west of the Alleghany mountains, which were granted by the commonwealth before the first day of April, eighteen hundred and thirty one, never were, or have not been for many years last past, entered on the books of the commissioners of the revenue where they respectively lie, by reason whereof no forfeiture for the nonpayment of taxes has occurred, or can accrue under the existing laws, the commonwealth is defrauded of her just demands, and the settlement and improvement of the country is delayed and embarrassed; for remedy whereof (2) be it, therefore, further enacted that each and every owner or proprietor of any such tract or parcel of land shall, on or before the 1st day of July, eighteen hundred and thirty six, enter, or cause to be entered, on the books of the commissioners of the revenue for the county wherein any such tract or parcel of land may lie all such lands now owned or claimed by him, her, or them, through

title derived, mediately or immediately, under grants from the commonwealth, and have the same charged with all taxes and damages in arrear or properly chargeable thereon; and shall also actually pay and satisfy all such taxes and damages which would not have been relinquished and exonerated by the second section of the act concerning delinquent and forfeited lands, passed March tenth, eigthteen hundred and thirty two, had they been returned for their delinquency prior to the passage of that act; and, upon their failure to do so, all such lands or parcels thereof, not now in the actual possession of such owner or proprietor, by himself, or his tenant in possession, shall become forfeited to the commonwealth after the first day, of July, eighteen hundred and thirty six, except only as hereinafter excepted."

The period allowed for redemption of lands thus forfeited was extended by various subsequent acts, but the conditions of redemption always insisted upon were the payment of taxes in arrear and the entry of the lands on the land books. Thus, on the 23d March, 1836, further time was given—until November 1st, 1836—to allow all persons to cause their omitted lands to be entered with the commissioner of the revenue, and to pay the taxes thereon, in the manner prescribed, etc.; and by Acts of March 30, 1837, and March 15, 1838, the time of redemption was still further extended. See Harlow, Delinq. & Forf. Lands, pp. 41, 47, 53.

Such was the state of the law when the sale of Goff as commissioner of lands was made, in November, 1842. The land books certainly tended to show that the land in controversy had been forfeited under the said act of February 27, 1835.

The next question for our consideration is: Conceding that this land in controversy was actually forfeited under the Bowyer and Breckinridge title, was it carried by the deed of Goff, commissioner, who had proceeded against it under the Ely title, in such manner as to vest all the title, of the commonwealth in the purchaser?

The proceeding of the commissioner was had under the act of March 30, 1857. Harlow, Delinq. & Forf. Lands, p.

48. This was the first act that made it the duty of the Circuit Superior Court for each county west of the Blue Ridge mountains to appoint commissioners of delinquent and forfeited lands in their counties. This act was amended at various subsequent sessions of the general assembly. The eighth section of the original act of March 30, 1837, provided as follows:

"That, whenever any purchaser of any lands at any sale under the provision of this act shall have paid the whole amount of purchase-money by him stipulated to be paid therefor, it shall be the duty of the court by whose order the sale was made to direct the said commissioner to convey to the said purchaser, by deed without warrant, all the interest of the commonwealth in said lands."

A further amendatory act was passed on the 22d March, 1842. Harlow, Delinq. & Forf. Lands, p. 63. By the latter act it is provided in the second section as follows:

"(2) And be it further enacted that in all cases of sale under the provisions of the acts above referred to, if the commonwealth or literary fund shall have acquired title to the same land by forfeiture in different names, all right, title, and interest which the commonwealth or literary fund may have acquired or shall acquire by any forfeiture of the same shall be transferred to and vested in the first purchaser, and it shall not be lawful to resell the same for any forfeiture, as aforesaid; and it shall be the duty of the commissioner of delinquent and forfeited lands to certify the facts attending any such case to the circuit superior court of law and chancery where the lands lie, and upon due proof thereof, before the said court, it shall be the duty of the court to make an order quieting the title of such purchaser thereto : provided, that nothing herein contained shall be construed to prevent a resale from being awarded where a former one shall have been set aside, nor to impair the rights of purchasers under different sales made before the passage of this act, in all which cases the rights of the parties shall be determined by the laws heretofore in force."

It is apparent, therefore, that the sale of 1842, made under and by virtue of the laws above cited, and the deed of

the commissioner, conveyed to the purchaser all the title which the commonwealth had acquired by forfeiture, no matter under what title or in whose name the forfeiture occurred. If the land was forfeited under the Bowyer and Breckinridge title for failure to enter on the land books, nevertheless the title passed to the purchaser. This construction of the law is not new, either in Virginia nor in this State, but it is well settled in both states. *Smith* v. *Chapman*, 10 Gratt. 445; *Strader* v. *Goff*, 6 W. Va. 257; *Coal Co.* v. *Howell*, 36 W. Va. 489 (15 S. E. Rep. 214.)

In regard to the objection to plaintiff's testimony, made against it *en masse* or *in solido*, such an objection will not be sustained if any of the evidence is competent. *Coal Co.* v. *Howell*, 36 W. Va. 489 (15 S. E. Rep. 214); *Brown* v. *Town of Pt. Pleasant*, 36 W. Va. 290 (15 S. E. Rep. 209).

This disposes of the questions at issue except one further objection, which counsel for defendants in error interpose to the introduction of a deed on the part of a married woman, because they suppose it not properly acknowledged in accordance with the statute. I think the evidence tends to show that the legal title was outstanding in a trustee; and, the trustee having united in the deed, the acknowledgment, even if defective, would not invalidate the title in an action of ejectment.

We are of opinion, therefore, that the tract in question, no matter in what grant it was originally included, would be carried by the deed of the commissioner of delinquent and forfeited lands, if it were at the time of the sale and conveyance actually forfeited to the State, and that the evidence introduced by the plaintiff tended to prove such forfeiture, and that the Circuit Court erred in excluding the plaintiff's evidence from the jury.

In the acts, which I have cited, and in other pertinent legislation there are a great many qualifications both in regard to original owners and actual occupants who have paid taxes, *etc.;* and all of these various qualifications and exceptions would doubtless have arisen had the case progressed to its legitimate conclusion, which was forestalled by the motion of the defendants to exclude the plaintiff's evidence. We have gone, therefore, in this opinion, no

further than the case as presented required, and that is to say that it was error to exclude the plaintiff's testimony, and that the judgment must be reversed, and the case remanded.

Reversed. Remanded.