# CHARLESTON.

BOWMAN *v.* DEWING & SONS.

Submitted June 12, 1901.    Decided December 7, 1901.

1. DEMURRER TO EVIDENCE—*Verdict.*
    On demurrer to evidence the rule in this State, as in Virginia, is to certify and consider the whole evidence as though no motion to set aside a verdict in favor of the demurree.    (p. 447).

·2. SALE OF LAND—*Forfeited Title.*
    A sale made in 1843, of a tract of land under a forfeited title which does not include or, cover such land, is void and a deed made by virtue thereof is also void and can vest no title in the purchaser and those claiming under him except such title as may be in the State at the date of such deed.    (p. 448).

3. EQUITABLE TITLE—*Taxes.*
    Section 3, Acts 1841-2, vests any forfeited title to a tract of

land in any person having just title and claim to such land, legal or, equitable, claimed, held, or derived from or under any grant of the commonwealth bearing date previous to the first day of January, 1843, who shall have discharged all taxes, duly assessed and charged against him upon such lands, and all taxes that ought to have been assessed or charged thereon, from the time that he acquired title thereto, whether legal or equitable. (p. 449).

Error to Circuit Court, Randolph County.

Action by W. W. Bowman against Dewing & Sons in eject-ment. Judgment for defendant and plaintiff brings error.

*Affirmed.*

STRADER & STRADER and W. B. MAXWELL, for plaintiff in error.

W. T. ICE and E. D. TALBOTT, for defendant in error.

DENT, JUDGE:

W. W. Bowman complains of a judgment of the circuit court of Randolph County rendered against him in an action of eject-ment the 2d day of February, 1898, in favor of Dewing & Sons, on a demurrer by him to the evidence.

This case was here once before, 37 W. Va. 117. Since then two trials have been had, both resulting in favor of the defendants. Defendants questioned the right of the plaintiff to compel them to join in his demurrer to the evidence, but as the court's rul-ing was in their favor they have now no complaint on this score, unless this Court be of the opinion the demurrer was im-properly determined. According to the holdings of the courts of other states a demurrer to evidence in a case of this character where the affirmative of the issue is with the plaintiff, would be improper. It being held that a party on whom rests the burden of the issue, cannot successfully demur to the evidence, as his own evidence cannot be considered on demurrer. 6 En. Plead. & Prac. 440; *Goodman* v. *Ford,* 23 Miss. 592; *Stiles* v. *Inman,* 53 Miss. 469; *Fritz* v. *Clark,* 80 Ind. 591; *Stanley* v. *N. W. M. I. Co.,* 95 Ind. 254; *Lyons* v. *Terre Haute R. Co.,* 101 Ind. 420; *Pickel* v. *Isrigg,* 6 Fed. Rep. 676. Such, however, has not been the practice in this State. The rule has been that either party may demur and that all the evidence must be certified and con-sidered by the court, giving the demurree the full benefit of all

just inferences and disregarding the demurrant's evidence wherein it conflicts with that of the demurree. It is true this Court held in the case of *Bennett* v. *Perkins,* 47 W. Va. 425, second point in syllabus, that "Either party has a right to demur to the evidence, but the demurrer is only applicable to the evidence of the party holding the affirmative of the issue." This is a departure in some degree from the former holdings of this Court and is a rule that applies where only the evidence of the demurree is considered. In this State it has been long held that the demurrer should set out the whole evidence on both sides for the consideration of the court. In most other states none but the evidence demurred to is set out or considered. So that the plaintiff can never safely demur to the defendant's evidence unless the defendant admits the plaintiff's case and pleads in bar or avoidance thereof.

In the 6 En. Plead. & Prac. 444, it is said under title of exception to the general rule that, "In two states where the practice of inserting all the evidence on both sides into the demurrer obtains, the rule is not quite so broad. The defendant (demurrant) is considered to have waived all his evidence which is contradictory to that of the other party, all evidence the credit of which is impeached and all inferences from his evidence which do not necessarily flow from it." The two states which are an exception to the rule that "the demurrer is only applicable to the evidence of the party holding the affirmative of the issue," are Virginia and West Virginia. *Green* v. *Judith,* 5 Rand. 1; *Umbleman* v. *Insurance Co.,* 6 W. Va. 508; *Gunn* v. *Ohio River R. R. Co.,* 42 W. Va. 676; *Shaver* v. *Edgell,* 48 W. Va. 502, (37 S. E. 664) ; *Maple* v. *John,* 42 W. Va. 30; *Talbott* v. *Railway Co.,* 42 W. Va. 560; *Teal, Admr.* v. *O. R. R. Co.,* 49 W. Va. 85. If the rule stated in *Bennett* v. *Perkins,* cited, is to be adopted in this State, the plaintiff having the affirmative of the isue in an ejectment case cannot demur to the defendant's evidence without waiving all his own evidence and thus virtually allow the case to be decided against him, for he must recover on the strength of his own title and without evidence he has no title. The proper rule on demurrer to evidence in this State appears to be that the court should consider the evidence on both sides as though the demurrer was a motion to set aside the verdict of a jury in favor of the demurree, and if the court would not set aside such verdict on consideration of the whole evidence it

should overrule the demurrer and enter judgment for the demurree. *Lewis* v. *C. & O. R. R. Co.,* 47 W. Va. 656. In the present case the plaintiff considering his title established by indisputable evidence demurred to the defendant's evidence as showing no sufficient defense to the suit. This was not because the defendants had the affirmative of the issue, but plaintiff having the affirmative claimed he had fully established it and that defendant's evidence was wholly insufficient to overcome the same. It is necessary therefore to examine the whole evidence as on a motion to set aside the verdict of the jury and say therefrom whether plaintiff is entitled to recover. The land sued for is a tract of one thousand one hundred and ninety-five acres lying on the east side of the Shaver's fork of Cheat river in Randolph County. The plaintiff derives his title from a deed made by David Goff, commissioner, to Ely Butcher, dated the 24th day of February, 1844, conveying a tract of one thousand acres, supposed to be covered or included in a grant of one hundred thousand acres, forfeited in the name of William Ely. It turned out, however, in proof and was admitted that the land in controversy was not covered by the Ely grant and was not forfeited therewith. The plaintiff attempted to cure this defect by showing that a grant of one hundred thousand acres to Wm. Bower and Wm. Breckenridge, in the year 1796, which included the tract in controversy was not on the assessors' books from 1829 to 1840 inclusive. The object of this was to show the same was forfeited to the State and by virtue of the deed from Goff, commissioner, and section 2, acts 1842, was vested in the plaintiff. The defendants show in response to this evidence that their title is derived through a grant to Richard Smith, dated 10th November, 1795, for thirty-one thousand acres, covering the land in controversy, which was relieved from the forfeiture by an act passed February 5, 1810; that this tract was carried on the proper land books in the name of Richard Smith and those claiming under him down to and including the year 1841 with the exception of the year 1816; that at different times it was assessed as a tract of thirty thousand, thirty-one thousand, thirty-three thousand and thirty-seven thousand. On a demurrer to evidence the inference naturally arises that it is the same tract of land. Also it would be a fair inference that for the year 1816 it was unintentionally dropped from the land books, was restored in 1817 and the taxes paid as the law required. So at the time of the

sale made by David Goff, commissioner, this land was not forfeited, but was properly assessed on the proper land books. The deed of the commissioner could therefore convey no title thereto to the plaintiffs, for the State had none to convey. *Twiggs* v. *Chevallie,* 4 W. Va. 463. The land not being covered by and not forfeited under the William Ely patent the court was without jurisdiction to sell it, and its decree is void as to all persons not party thereto, and could convey no title unless it be the title of the State under section 2, acts 1842, as held in the case of *Bowman* v. *Dewing,* cited.

There is one element that it seems to me the court overlooked or failed to take into consideration in that case, and that is that the sale of David Goff, commissioner, was wholly void from the fact that the land was not covered by nor forfeited under the William Ely grant and the court was without jurisdiction to make such sale. *Twiggs* v. *Chevallie,* cited. Section 2, acts 1842, was not intended to apply to void sales. It is in these words: "And be it further enacted, that in all cases of sale under the provisions of the acts above referred to, if the commonwealth or literary fund shall have required title to the same land by forfeiture in different names, all right, title and interest which the commonwealth or literary fund may have acquired or shall acquire by any forfeiture of the same shall be transferred to and vested in the first purchaser, and it shall not be lawful to resell the same for any forfeiture as aforesaid." The court of appeals of Virginia in construing this provision held, "Land is forfeited to the commonwealth under distinct titles. Upon the proceeding to have the land sold under either title, the sale and conveyance passes all the title vested in the commonwealth." *Smith et al.* v. *Chapman,* 10 Grat. 445. In the present case the land was not forfeited under the William Ely title, but the sale and deed were void. Hence they furnish no basis to which another forfeited title covering the land could attach. To make the act apply the land must be covered by and be forfeited under both titles. This the law says in words "if the commonwealth or literary fund may have acquired title to the *same* land by forfeiture in different names." And it nowhere provides that if land be sold under the forfeiture of a title which does not cover it, such sale shall be valid to carry the commonwealth's title. The act assumes that the sale must be under a forfeited title under which it is included. It makes no provision for void sales.

Admitting, however, that the act does apply to void sales, still the Richard Smith title being valid and not forfeited section 3 of the same act vested in the holder of such title at the date thereof the forfeited Bower and Breckenridge title. The section is as follows: "And be it further enacted that all the right, title and interest, which shall be vested in the commonwealth in any lands or lots lying west of the Alleghaney mountains, by reason of the non-payment of the taxes heretofore due thereon, or which may become due on or before the first day of January next or of the failure of the owner or owners thereof to cause the same to be entered on the books of the commissioners of the proper counties and have the same charged with taxes according to law by virtue of the provisions of the several acts of assembly heretofore enacted in reference to delinquent and omitted lands, shall be and the same are hereby absolutely transferred to and vested in any person or persons (other than those for whose default the same may have been forfeited, their heirs or devisees) for so much as such person or persons may have just title or claim to, legal or equitable, claimed, held or derived from or under any grant of the commonwealth, bearing date previous to the first day of January, 1843, who shall have discharged all taxes, duly assessed and charged against him or them on such lands and all taxes that ought to have been assessed or charged thereon from the time that he, she or they acquired title thereto, whether legal or equitable." Barlow's Delinquent and Forfeited Lands, 65. This act was passed March 22, 1842, and took effect from its passage. The commissioner's sale was not made until November, 1842, was not confirmed until October 6, 1843, and the deed was not executed until 20th February, 1844. Hence the act left no title to invest in the purchaser, but his deed was void, giving at the most only a color of title which never ripened into title by possession or otherwise. · It appears from the recitals of the tax deeds in this case from Crawford, clerk, to Camden and others that this land was carried on the assessors' books for the years 1832, 1833, 1834, 1835, and 1837, both in the name of William Moncure and Henry Moncure and David Doyl, being plainly a double assessment thereof. That it was returned delinquent for the non-payment of the taxes for said years in the name of David Doyl and on the 27th day of October, 1840, was sold by the sheriff and purchased for the commonwealth. The taxes for the assessment in the name of the Moncures appear

to have been paid up to and including the year of 1841, and covering the date of the act aforesaid. For the years 1842, '43 and '44, it was returned delinquent in the name of Henry W. Moncure,.and in 1845, purchased for the commonwealth. Neither of these were forfeitures for non-assessment but purchases made by the commonwealth. The title thereby acquired could not possibly vest in the plaintiff by virtue of the Goff deed for section 2. acts of March, 1842, only applies to title by forfeiture and not by delinquency and purchase. The commonwealth sold the land for this delinquency, and it was purchased by Camden, Hoffman and Arnold under the delinquency both in the name of Doyl and Moncure. Camden, Hoffman and Arnold conveyed the land to J. H. Arbogast, who was thereafter assessed with taxes thereon. In the years 1868 and 1869 it was off the land books but was redeemed by Arbogast by the payment of the taxes due thereon, and it was replaced on the land books. Thereafter it was regularly assessed and presumably the taxes have been paid to the present time.

Plaintiff having shown nothing in evidence but a mere color ot title by deed under a decree founded on a false report, and possibly good only as to such title as may have vested in the State at that time, and the defendants having shown a better title the court committed no error in overruling the demurrer to the evidence. The judgment is affirmed.

*Affirmed.*