# WHEELING.

## LOW. v. SETTLE.

### (SNYDER, PRESIDENT, Absent.)

Submitted January 14, 1889.—Decided June 28, 1889.

1. EJECTMENT—EVIDENCE—TITLE.

     In ejectment, when both parties claim to derive title from the same third person, the rule is well settled, that it is *prima facie* sufficient for plaintiff to prove such common derivation of title without proving, that such third person had title to the land in controversy.

2. EJECTMENT—TITLE.

     ·A plaintiff in ejectment against one in actual possession must recover on the strength of his own title, not on the weakness of his adversary's.

·3. DEED—TITLE.

     A deed conveying a tract of land by boundary, but excluding a tract of fifty acres theretofore sold to another other than the grantee in such deed, does not pass to such grantee legal title to said fifty acres, even though no deed for said fifty acres had been made to such other person, who purchased it.

*J. W. Davis* for plaintiff in error.

*J. A. Preston* for defendant in error.

BRANNON, JUDGE:

This cause has been before this Court heretofore, and the report of the decision then made is in 22 W. Va. 387, where many of its facts may be learned. It was in ejectment brought February 7, 1881, by Low against Settle in the Circuit Court of Fayette county. When the cause was remanded from this Court, a second jury-trial was had in that court. Both parties claimed under Sarah Stuart. In September, 1837, Seth Huse purchased from Sarah Stuart by written agreement out of a large tract fifty acres described simply as "fifty acres of land on New river, including the upper improvement, that John Scott has in possession." Huse sold Settle this fifty acres in 1845 by writing providing, that, when the purchase-money should be paid, Huse should

convey or cause it to be conveyed to Settle. The agreement between Huse and Stuart was a mere executory agreement not under seal, and provided, that Huse might take in more land at fifty cents per acre.

By Sarah Stuart's will she devised lands, of which she died seised, to her children and by a codicil empowered Samuel Price, her executor, "to convey any lands, that may be sold at the time of my death." These children had parties to divide this land between them, and they made a plat of the division, on which was marked, "Share E lot No. 5, 5,083½ acres, assigned to Agnes Peyton;" and on this plat within the boundaries of "Share E," appears a figure, bounding on New river, and on it the words and figures, "Harrison Settle, fifty acres."

On the 12th of August, 1859, these children of Sarah Stuart entered into a deed executing such partition conveying the lots to one another, whereby lot E aforesaid was conveyed to Agnes Peyton under the language,—"The tract or parcel of land designated in the report aforesaid as share E, lot No. 5, of the Loop lands, containing, exclusive of lands sold, 5,083½ acres, and bounded as follows:" inserting boundaries, which, as appears from said plat and the calls of the deed, follow the river and include this fifty acre Harrison Settle land.

By deed dated 22d April, 1874, Agnes Peyton and her trustees conveyed this lot 5 to Low reciting, that by re-survey it contained 6,375¾ acres, "and, excluding 1,575 13–160 acres surveyed out, contains 4,792 107–160 acres;" and then giving boundaries, including the Settle tract. This deed to Low contained also the following language: "The lands included within the boundary aforesaid, which are surveyed out and excluded from the quantity sold and hereby conveyed, are the following, to wit: * * * And Harrison Settle fifty acres, among other parcels."

In 1874 Settle employed a surveyor to survey the fifty acres, in order to obtain calls to get a deed for it, and the surveyor made a plat and delivered it to Settle, who took it to Price to obtain a deed. He was present at the survey and specifically directed how the lines should be run. He was told by the surveyor, that, as he wished it run, the improvement and his house would be left out, but he insisted upon

so running it. Settle as a witness denied this. Samuel Price, executor of Sarah Stuart, made Settle a deed by the calls of said survey for said fifty acres, which is dated April 3, 1874, but was not delivered to Settle until March 5, 1878, and recorded March 28, 1878. Settle claims that his land lies on New river, as represented by said figure on the plat of partition between the Stuart children, while plaintiff claims, it should be limited to the Price deed; and between the bounds of the Price deed and New river there would be about fifteen acres, which is the land in controversy, and includes the Scott improvement. We have not the aid of the plat filed in the action of ejectment made under order therein. The plaintiff disclaimed any land within the deed from Price to Settle, and Settle disclaimed any land not within the limits the figure marked, "Harrison Settle fifty acres," on said partition plat. Defendant Settle as a witness stated, that he had been in his possession of the land in controversy ever since 1845, when he entered upon it under his purchase from Huse, and that Huse had been in possession from the date of his contract with Sarah Stuart in 1837 down to the time, when he delivered possession to Settle in 1845; that the land in controversy is part of the land purchased by him of Huse and so held by him in possession and is covered by the Scott improvement. Settle signed the following writing on the back of the agreement between Huse and him, by which he purchased the land: "Rec'd of Harlow Huse, Samuel Price's executor's, deed for the within described land, this 5th March, 1878."

On the trial the court gave four instructions asked by plaintiff, to which the defendant excepted, and refused two asked by defendant, to which he also excepted. The jury returned a verdict for the land in the declaration specified in favor of plaintiff except the fifty acres described in the Price deed, which they found for defendant. Defendant moved for a new trial, which the court refused, and he excepted to this refusal, and judgment was rendered on the verdict, and Settle obtained this writ of error.

There were certain title papers given in evidence by plaintiff in the line of title prior to the ownership of Sarah Stuart, to which defendant objected as ineffectual to pass legal title,

and which the court told the jury were effectual to do so. But, as both parties claim under Sarah Stuart, the plaintiff need not have traced his title further back than to her, to show that she had title, *Laidley* v. *Land Co.*, 30 W. Va. 505, (4 S. E. Rep. 705), and we do not deem it necessary to decide the points raised by the first and second assignments of error.

Defendant assigns as error the giving of plaintiff's instructions Nos. 1, 2, and 4, and the refusal of defendant's instructions Nos. 1 and 2, as follows: Plaintiff's instructions:

"(1) If the jury believe from the evidence that the land in controversy is embraced in and conveyed by the deed from A. and H Stuart, trustees, to Agnes Peyton, and by said Agnes Peyton and her children to the plaintiff, then they must find for the plaintiff, unless they further believe from the evidence that the defendant has been in exclusive, actual, continual, visible, and notorious possession of the land for more than ten years prior to the commencement of this action, claiming the same under claim or color of title, adversely to the title of plaintiff, and those under whom his title is derived; and the jury is also instructed that the claim of the defendant, Harrison Settle, derived from Seth Huse and his vendor, could not be adverse to the plaintiff, or those under whom he claims, until the deed of Samuel Price, executor of Sarah Stuart, was delivered to said Harrison Settle, and from that time it was adverse.

"(2) If the jury believe from the evidence that the defendant, Harrison Settle, entered into possession of the land in controversy under an executory contract, which left the legal title in his vendors, and contemplated a further conveyance of the complete title, his entry was in subordination to the legal title, and in that event a privity existed which precluded the idea of a hostile or tortions possession that could silently ripen into an adverse possession under the statute of limitations."

"(4) The court instructs the jury that if they believe from the evidence that the defendant, Settle, accepted the deed from Price, executor, to him, which was read in evidence, and surrendered the title-bond from Huse to him to said Huse, as satisfied by said deed, and that no fraud was used by either said Huse or Price to induce him to accept said

deed and surrender said title-bond, then they must find for the plaintiff the land in the declaration mentioned, except the land embraced in and conveyed by said deed, and that the defendant may have labored under a mistake as to the contents of said deed can make no difference in this action."

Defendant's instructions:

"(1) The defendant moved the court to instruct the jury that if they believe from the evidence that in the partition made between the devisees of Sarah Stuart, in 1857, the land in dispute was not divided, and that in the deed of partition between the said devisees of Sarah Stuart made on the 12th day of August, 1859, the land in dispute was regarded as sold land, then the title to the land sued for is not in the plaintiff, and they must find for the defendant."

"(2) That if the jury believe from the evidence that shortly prior to August, 1859, the devisees of Sarah Stuart made a partition of their lands, and on the map of partition a fifty acre tract was assigned to Harrison Settle, the defendant, and that by the deed of partition of 1859 between said devisees, as read to the jury, the said devisees excluded from the conveyance that fifty acres so assigned to Harrison Settle, and that said fifty acres covers the land now in dispute, and that Harrison Settle was in possession of the land in dispute on the day said partition was made, and remained in possession thereof continuously, claiming the same as his own and adversely until the day this suit was brought, then they should find for the defendant."

If we suppose the land in controversy to be land purchased by Huse of Stuart, and the plaintiff's deed conveyed it to him, then Settle would have only the equitable title, while the plaintiff would have the legal title, and defendant could not defend on this equitable title, because he had given no notice of such defence under Code 1887, c. 90, s. 22. But he relied on adverse possession. He could not in such case defend on that basis. He and his vendor, Huse, took and held possession under the title of Sarah Stuart under executory agreement with her contemplating and requiring future conveyance to pass title, and their possession was not adverse to her until at least the date of the Price deed, April 3, 1874, or rather the 5th of March, 1878, the date of its deliv-

ery, under the law as stated in *Core* v. *Faupel*, 24 W. Va. 239. There was evidence tending to this state of facts. For this reason we see no error in plaintiff's instructions Nos. 1 and 2.

As to the refusal of defendant's instruction 1 : The plat of partition between the Stuart children does represent a figure as the Settle fifty acres; but the deed under it includes in its boundary that fifty acres, and the words, "containing, exclusive of land sold, 5,083½ acres," found not in the granting clause of the deed but in the clause giving quantity, do not exclude the fifty acres from the boundaries and the granting effect of the deed. This instruction assumes a state of facts, which there was no evidence to sustain, and is therefore irrelevant. *Bloyd* v. *Pollock*, 27 W. Va. 75. The same may be said of defendant's instruction No 2.

As to plaintiff's instruction No. 4 : As executor Samuel Price had power under the will of Sarah Stuart to convey land, which she in her lifetime had sold, not land which at her death she owned except that, which as executor he might sell. It appears, that the land included in the Price deed to Settle does not include the land sold to Huse; certainly not the Scott improvement. Could Price make a substitution, or both he and Settle, substituting for land, which Sarah Stuart sold, land she had not sold ? It would seem not. It would not bind the devisees, and, if not them, it ought not to bind Settle, for it ought to be mutual. It could not pass legal title. The instruction required the jury by force of that deed to find for the plaintiff, if the facts were as therein assumed. It should not have been given.

As to the motion for a new trial: The deed from Price to Settle, dated April 3, 1874, was not delivered to Settle till March 5, 1878, and that from Peyton and others to Low is dated 22d April, 1874. The words quoted above from the deed to Low exclude from its operation some land referred to therein as the Harrison Settle fifty acres, and therefore it does not pass title to Low. To what does this excluding clause refer ? We think it refers to the fifty acres sold to Huse and by him to Settle. The agreement by which Huse purchased is indefinite in its description of the land, general and uncertain, but certainly includes the Scott improvement, though beyond that uncertain ; and these exclud-

ing words in the deed to Low would have the effect to exclude that improvement, of which Settle was in possession, and to that extent at least plaintiff had no legal title and could not recover, as a plaintiff in ejectment must recover on the strength of his own title not on the weakness of his adversary's. The motion for a new trial should have been sustained.

, Therefore the judgment is reversed, the verdict set aside, a new trial awarded and the cause is remanded to the Circuit Court to be further proceeded in according to the principles herein indicated, and otherwise according to law. The plaintiff in error, Settle, recovers his costs here.

Reversed—Remanded.