## SPILLMAN et al. v. BROWN.

## BROWN v. SPILLMAN et al.

*(Circuit Court, D. West Virginia. February 10, 1891.)*

LEASE—EXCEPTION—DEED.

A lease for oil purposes described the premises demised as 40 acres of land, described by metes and bounds, "excepting reserved therefrom 10 acres," also described by metes and bounds, "upon which no wells shall be drilled without the consent of the party of the first part." *Held*, that only 30 acres passed to the lessee.

In Equity.

Bill by B. D. Spillman and W. N. Chancellor against Joseph S. Brown, and cross-bill by Joseph S. Brown against B. D. Spillman and W. N. Chancellor.

*John A. Hutchinson*, for plaintiffs.

*Thomas I. Stealey*, for defendant.

JACKSON, J. The complainants file their bill, seeking to remove a cloud upon their title, and allege that they are the owners in fee-simple of a tract of 40 acres of land in the county of Pleasants, in this state, which was conveyed to them by John F. Taylor and wife by deed bearing date on the 30th day of June, 1890. It is further alleged in the bill that this tract of land is subject to a lease for oil purposes, embracing about 30 acres of land, made by the grantor in the deed in July, 1889, to Joseph S. Brown, and that the residue of 10 acres is not embraced by said lease, and is unincumbered by it, and was held by the said Taylor in fee-simple at the time he conveyed the tract of 40 acres to the plaintiffs in this action. Other grounds of relief are set up in the bill, which are unimportant, and therefore not considered. The land in controversy is chiefly valuable for the oil and minerals supposed to underlie its surface. The defendant in his answer admits that the plaintiffs have purchased the land in fee from Taylor, and obtained his deed therefor, but he denies that the 40 acres of land are subject to a lease embracing only 30 acres, as alleged in the plaintiffs' bill; on the contrary, he files his cross-bill, claiming a leasehold estate in the entire tract of 40 acres, as is shown by his lease of July, 1889, legally recorded in the county where the land lies, which he claims was constructive notice of his rights under it, which contains a provision that "no wells shall be drilled without the consent of the grantor upon the ten acres," claiming it to be a limitation on the right of the lessee to bore wells on the 10 acres, and nothing more.

The question presented for the consideration of the court turns upon the construction of the lease executed by John F. Taylor to the defendant, Brown, in July, 1889. That lease describes the property granted as—

"Bounded on the north by lands of Mrs. Jones and the Ohio river; south, by lands of A. Smith; west, by the county road; east by Mrs. Jones,—containing 40 acres, more or less, 'excepting reserved therefrom 10 acres,' beginning at the railroad, and running thence to the county road; thence south, with the county road, to A. Smith's line; thence, with A. Smith's line, to a line to be drawn from the railroad to meet it,—upon which no wells shall be drilled without the consent of the party of the first part."

The contention of the plaintiffs is that this is a reservation and exception in the lease by the grantor, Taylor, to the defendant, Brown, which expressly reserves 10 acres upon which no wells shall be drilled except by the permission of the grantor; while the contention of the defendant is that the words used and employed have not the force and effect of an exception or reservation, but that it is a limitation, and that it 'is repugnant to the grant, and therefore void. What, then, did the defendant acquire when he took his lease, with an exception expressly defined, and excluding it from the thing granted? To answer this inquiry requires the court to determine the force and effect of the words "excepting reserved therefrom 10 acres," used by the grantor in his lease to the defendant. Are these words to be treated as an exception, or are they words of a mere limitation upon the grant? It is not an unusual thing for parties to grant a tract of land by exterior boundaries, reserving and excepting within the boundaries a certain amount of land. It was not an unusual thing in the history of grants from the commonwealth of Virginia to issue what are called "inclusive grants," granting a large amount of land within specified and enumerated boundaries, and reserving and excepting within those boundaries lands that either had theretofore been granted, or upon which entries had been made, but upon which no grant had issued. Reference to the old horn-books of the common law informs us that deeds containing exception, reservation, and restriction were not unusual in the early history of jurisprudence. Sheppard's Touchstone says that "an exception is a clause of a deed whereby the feoffor, donor, grantor, or lessor doth except out of that which he had granted before by the deed, or which was embraced within. its terms." Volume 1, p. 77. *Stowel* v. *Zouch*, 1 Plowd. 361; *Wrotesley* v. *Adams*, Id. 195; *Wiltshire* v. *James*, 1 Dyer, 59a; Perk. § 625. Coke on Littleton says "that an exception most commonly and properly succeeds the description of the thing granted, and is made by words of similar import." Under such circumstances, the thing excepted is exempted, and does not pass by the grant; neither is it a parcel of the thing granted. But this exception may be in any part of the deed, and it has been so resolved. Hil. 17 Car. The same author says: "There is a diversity between a reservation and exception." The exception "is ever of part of the thing granted, and of a thing *in esse*," while a reservation "is always of a thing not *in esse*, but newly created or reserved out of the land or tenement demised;" and he adds "that sometimes the word 'reserved' hath the force of saving or excepting. Every exception must be by apt words. It must be a part of the thing only, and not of all

the greater part that has been granted, and not of some other thing. It must be of such a portion as it is severable from the thing granted, and not of an inseparable incident, and it must be that which properly belongs to the grantor." Co. Litt. 47*a*.

Modern authorities at this day approve the definition of exception as given by the commentators we have referred to. Lomax, in his digest of the laws respecting real property in this country, says that an exception in a deed is that whereby the grantor excepts something out of that which he has before granted, by which means it does not pass by the grant, and is severed from the thing granted. Washburn on Real Property, in defining an exception, says:

"If the grantor wish to except anything out of what he may in general terms have granted, it is proper that such exception should follow the description of the thing granted, and it comes, therefore, under the head of the premises in the deed. As an exception is the taking of something out of the thing granted which would otherwise pass by the deed, it may be said, in general terms, that it ought to be stated and described as fully and accurately as if the grantee were the grantor of the thing excepted, and the grantor in the deed were made the grantee by the exception. It must, in the first place, be a part of the thing included in the grant, and be to be taken in substance out of that." Volume 3, (5th Ed.) p. 461.

In *Munn* v. *Worrall*, 53 N. Y. 44, the deed, after describing the land conveyed, contained this exception: "Saving and excepting from the premises hereby conveyed all and so much and such part and parts thereof as has or have been lawfully taken for a public roads or roads." The court held in that case that the exception covered by the land taken for the public highway across the premises did not create a public easement therein, but that the fee of the land so covered remained in the grantor, and passed by a subsequent conveyance thereof to a third person.

So in *Low* v. *Settle*, 32 W. Va. 600, 9 S. E. Rep. 922, it was held that a deed conveying a tract of land by boundary, but excluding a tract of 50 acres theretofore sold to another other than the grantee in such deed, does not pass to such grantee legal title to said 50 acres, even though no deed for said 50 acres had been made to such other person who purchased it.

In the case of *Roberts* v. *Robertson*, 38 Amer. Rep. 710, the court held that where the deed contains a specific description of the land conveyed, and contains a general clause reserving lots designated by numbers, without any particular description by boundary, the reservation was good, holding in that sense that the word " reserving," used in the deed, in strict sense means "excepting."

For the principle stated by the cases cited numerous other modern authorities might be relied on. As opposed to this position, it is claimed by the defendant that if the language used be an exception, then it is repugnant to the object of the grant, and therefore void; and Taylor's Landlord and Tenant, §§ 156, 157, and cases there referred to, are relied on in support of this objection, where it is laid down that "an exception of that which is expressly granted will be void for repugnancy," as if a man leases 20 acres excepting 10 acres. There the exception is held

to be void. In the view we take of this case it is unnecessary for us to determine whether the rule thus laid down by the defendant is law. We think that there is no such repugnancy as is claimed in this case. The exception in this case is not out of a thing that has been previously granted, but is a part and parcel of the very substance of the granting clause.

In the case of *Greenleaf's Lessee* v. *Birth*, 6 Pet. 302, Judge STORY, speaking for the supreme court, lays down the law that where a thing forming the exception is of the thing granted, and incorporated in substance in the granting clause, the exception is not repugnant to the grant.

Another position of the defendant is that the words employed, "excepting the ten acres from the grant," was a mere limitation upon the rights of the lessee to bore wells, and nothing more, and for this position he relies upon a decision rendered by the supreme court of Pennsylvania, in the case of *Gas Co.* v. *DeWitt*, to be found in 130 Pa. St. 235.[1] The controversy in that case arose over a lease which contained the following provision: "No wells to be drilled within three hundred yards of the brick building belonging to J. H. Brown;" and the question was whether this was a reservation in favor of the landlord. The court in that case held that it was not a reservation, but only a limitation upon the right of the lessee to bore wells, and nothing more. The language used and employed in that lease was a mere restriction upon the particular party. There were no words of exception or reservation to be found in it. There was no estate excepted or reserved, or carved out of the grant. It was a mere inhibition upon the part of the lessee to drill wells within a certain specified distance of the grantor's dwelling-house. When we refer to the lease we have under consideration, we find that the grantor, in declaring the exception, used the words "excepted reserved therefrom ten acres." It is not manifest that he employed the two words "excepted reserved" indiscriminately, and that his object and purpose of using them as he did was to secure an exception and exemption of the 10 acres from the grant of power in the lease. It describes the tract of 40 acres by metes and bounds, describing it in such a way as to leave no misapprehension or misconception as to the intention of the parties to it. It is true that in this connection, after describing the estate to be "reserved excepted," he added the words "upon which no wells shall be drilled without the consent of the party of the first part." It is not apparent to my mind why the grantor used this language. If he intended to exempt the 10 acres from the lease to Brown, then this restriction was unnecessary. If he did not intend to exempt the 10 acres from the lease, but merely to restrict the lessee from boring on the 10 acres, upon which his dwelling-house stood, then it was unnecessary to carve out by specific metes and bounds an estate which he declared by apt legal terms to be "excepted reserved" from the grant in the lease. These words are usually employed as expressing the intention of the party who desires to carve out and exempt an estate within the bound-

[1] 18 Atl. Rep. 724.

aries of a grant or deed which embraces the portion to be reserved. I am therefore inclined to the opinion that the grantor used the words out of great precaution, intending that they should be, not only a notice to the lessee, but to any one who might acquire his rights under the lease. They were not used in a restrictive sense, but were clearly intended to make an exception and reservation tantamount and equivalent to a grant.

We cannot conceive what words the grantor could have employed or used which would have expressed his purpose and intention more strongly than the words he used in carving out this exception. It is unlike the case relied upon by the defendant, for there there was no estate carved out by specific metes and bounds, but a more general description of the estate, with a restriction that no wells should be drilled within 300 yards of the house of the grantor. But if this was not so, still it is well settled that a title acquired by a grantor in the manner that Taylor acquired his title to the 10 acres is as good as if acquired by direct grant or conveyance from another party.

In the case of *Stockbridge Iron Co.* v. *Hudson Iron Co.*, the supreme court of Massachusetts held that, "whatever is excluded from the grant by exception, remains in the grantor as of his former title or right." 107 Mass. 321. In that case there was a reservation upon the part of the grantor to mine for iron ore, etc., which the court construed to be a reservation of new rights to the grantee out of the granted premises, having the effect, as we have before seen, of a grant from the lessee to the lessor.

Applying to this case the rule laid down by the authorities defining an exception, we resolve any doubts that may exist as to the legal construction of the lease relied on to defeat the plaintiffs' action. We conclude, therefore, that the exception by which the grantor excepted to himself 10 acres of land, and by which he carved out an estate of 10 acres, in disposing of the whole tract by its exterior boundaries, did not convey any portion of the 10 acres to the defendant, and the grantor had a perfect right, after the execution of that lease, to make any further disposition of the 10 acres, so excepted and reserved, as in his own judgment he thought best to do. In reaching this conclusion I have adopted the rule of construction which exists in all cases of identity, where deeds and descriptions of lands are conveyed or excepted from grant. It is a familiar principle that a grant of land will not be held void for uncertainty if the court can see that the testimony will render certain the land granted. And so a deed is not to be held void for uncertainty if by a fair construction of the words employed and used in the grant the deed can be made valid. In this case there can be no question as to the locality and description by boundaries, not only of the 40 acres, but of the 10 acres reserved, excepted, and carved out of it. The description is made so certain by metes and bounds that the court must hold it to be sufficient, and that the reservation and exception operates as a grant from the grantor in this case as if he was the grantee; or, in other words, it has the effect of being a grant to him-

self. It is apparent to my mind that the parties intended to lay off the 10 acres and reserve it from the grant, otherwise they would not have given the boundaries of 3 sides of the 10 acres, and then stated that the closing line was to be from the end of the third line to the beginning. There is nothing in the pleadings or the evidence in this case which would justify the court in reaching any other conclusion. If it was the intention of the grantor to convey all his rights in the 10 acres to the lessee, under the lease of July, 1889, then there was no occasion for a reservation or exception of the 10 acres. All that would have been necessary for him to do was to have inhibited and restrained the party from boring within a certain distance of his residence, as in the Pennsylvania case. This he did not do, but, on the contrary, he carved out, as we have before said, an estate of 10 acres by specific metes and bounds.

A decree will be passed dismissing the cross-bill, and perpetually inhibiting and restraining the defendant, his assignee, or those claiming under him, from in any wise interfering with the 10 acres reserved, and directing the surveyor of this court to go upon the land, and lay off the 10 acres by metes and bounds, as set out and described in the exception and reservation contained in the lease.