Jan'y Term,      Camden and Karnes, adm'rs, *vs.* Creel.      1870.

# Wheeling.

GIDEON D. CAMDEN AND W. C. KARNES, ADM'RS, *vs.* B. W. CREEL.

### January Term, 1870.

A patent calls for a corner on the south side of a river, and thence crossing to the north side gives other calls, and running from the north side recrosses to a corner on the south side, and from last named corner with the meanders of the stream, to the beginning, which latter is not the same distance from the stream that the last before named corner is. HELD:

> That the last line should be run along the south bank of the river, taking care to keep the line the same distance from the water in the river, when at ordinary stage, that the beginning corner and the last mentioned corner theretofore, are from the water at the same stage.

This cause arose in Wood county. The bill was filed at May rules, 1864, and the decree complained of was rendered by the circuit court of that county in June, 1868. There were several causes alleged in the bill and amended bills, as grounds of injunction to the collection of the balance of purchase money due from the estate of Samuel D. Karnes, the complainant below, to the defendant in the bill below, B. W. Creel, but this court only considered the question of the proper location of one line in the survey, the matters concerning which are sufficiently stated in the opinion of Judge Maxwell. The complainants, administrators of S. D. Karnes, appealed to this court.

Hon. Geo. H. Loomis, judge of the circuit court of Wood county, presided on the hearing of the cause.

*Boggess* for the appellants.
*J. M. Jackson* for the appellee.

MAXWELL, J.   This cause turns entirely upon the construction to be given to the calls of the grant to William Hartshorne, of the 129 acre tract of land.

The calls are for the land as lying on the north side of Hughes' river, beginning at a black oak on the south bank of said river, thence crossing the river to the north side thereof, thence by certain courses and distances to a gum and two beeches, thence S. 3°, E 68 poles to two sugar trees and a buckeye on the north bank of said river, the same course continued 10 poles further, making in the whole 78 poles, to the south bank of said river, thence up the same with its meanders 492 poles to the beginning.

The question is, how does the line run from the point at the end of the said ten poles on the south bank of the river to the beginning corner?   It appears from the evidence in the case that when the river was about belly deep to a horse, the black oak, beginning corner, was five rods and some links from the edge of the water, and that the point on the south bank of the river at the end of the said ten poles from the two sugar trees and buckeye on the north bank was, at the same time, about six poles from the edge of the water.

There is no doubt where the commonwealth or an individual having title to lands lying on both sides of a water course, not navigable, grants the lands lying on one side thereof and bounded thereby, that the grantee gets by such grant a moiety of the bed of the water course, unless the grant clearly excludes such construction of it.   *Hayes* vs. *Bowman*, 1 Randolph, 417;  *Mead* vs. *Haynes*, 3 Randolph, 33;  *Crenshaw* vs. *The Slate River Co.*, 6 Rand., 245;  *Buckley* vs. *Blackwell*, 10 Ohio Reports, 508;  *Hopkins* vs. *Kent*, 9 Ohio Reports, 13.

No case has been cited where the calls are to cross the water course, as in the case under consideration.   We are therefore left to decide this case without either guide or restraint.   If calls for the north side of the river as a boundary would have given the grantee title to the middle of the river, something more must have been intended by

calling for the south bank of the river. In the view I take of the language used in the survey, I have no difficulty in determining what was intended. The language of the survey is, "to the south bank of said river, thence up the same with its meanders 492 poles to the beginning." I understand this language, "thence up the same," to mean up the south bank to the beginning. It seems to me this view is supported by the fact that the call at the lower point is not for timber that might have stood accidentally at that place, but is for a point that is about the same distance from the river that the beginning corner stands.

My conclusion is that the line should be run from the lower point on the river bank to the beginning corner along the south bank of the river, taking care to keep the line run the same distance from the water in the river, when at ordinary stage, that the beginning corner and the lower point on the river bank are from the water at the same stage. *State of Alabama* vs. *State of Georgia*, 23 How., 505.

It follows, therefore, that the decree complained of will have to be affirmed, with damages and costs to the appellee.

Brown, P., concurred in the judgment.

DECREE AFFIRMED.