# CHARLESTON.

THE WILLIAM JAMES SONS CO. v. HUTCHINSON *et al.*

Submitted January 6, 1914.    Decided January 14, 1914.

1.   EJECTMENT—*Title—Reliance on Common Source.*
       For a plaintiff in ejectment to rely on common source of title, it must appear that the defendant's claim of title somewhere connects with a party under whom the plaintiff claims.   (p. 489).

2.   LANDLORD AND TENANT—*Landlord's Title—Estoppel of Tenant.*
       The mere execution of a lease does not estop the lessee from denying the title of the lessor.   The estoppel only arises by possession under the lease.   (p. 490).

3.   WITNESSES—*Competency—Transactions With Deceased.*
       One through whom a plaintiff in ejectment derives his title is incompetent to testify on the trial of the action against the defendant grantee of a person then deceased, in regard to a personal transaction with the deceased in his life time.   (p. 492).

Error to Circuit Court, Raleigh County.

Action by the William James Sons Company against L. H. Hutchinson and others.   Judgment for plaintiff, and defendants bring error.

*Reversed and Remanded.*

*A. A. Lilly, J. H. Hatcher* and *Dillon & Nuckolls,* for plaintiff in error.

*McCreery & Patterson* and *T. N. Read,* for defendant in error.

ROBINSON, JUDGE :

In this action of ejectment, plaintiff, a corporation, sought to recover the land in controversy without tracing its title to the Commonwealth, by showing that defendants, each in possession of a separate parcel of the land, claimed title from

a source common to that of plaintiff, and further, as an alternative, by showing that defendants held in subordination to the title of plaintiff and were estopped to deny that title. Upon writ of error to a judgment for plaintiff, through the verdict of a jury, defendants claim that a common source of title was not proved, that no relation estopping them to deny plaintiff's title was established, that incompetent testimony was admitted, and that the jury were misdirected. An examination of the record leads to the conclusion that plaintiff did not make out a case entitling it to recover, and that there are other errors warranting a reversal of the judgment. As briefly as may be we shall discuss the pertinent phases of the case.

Plaintiff proved title from one Granger, but its evidence does not connect defendants' claims of title with Granger or with any other source common to plaintiff. It appears that defendants claim from Alfred Beckley, through possession under a written contract of sale made by him to James A. Hutchinson in 1873. There is parol testimony that Beckley was an agent of Granger for the sale of lands. Yet the written contract of sale from Beckley, back to which run the claims of defendants to the land, evidences nothing but a sale by him in his own behalf. For all it shows, Beckley claimed the land as his own, and contracted to sell the same as his individually. There is not a word in the record to show that Beckley made this particular sale of land for Granger. No authority for Beckley to sell for Granger the particular land now in controversy is shown. Plaintiff only proved that defendants' claims of title arose from Beckley, not Granger.

The Granger title passed to Azel Ford. At that time James A. Hutchinson was in possession of the land under the contract from Beckley, and had been in such possession for many years. Ford went to Hutchinson for an adjustment of their respective claims to the land. He made a deed to Hutchinson for a part of the land, 126 acres, describing the same therein by metes and bounds. Plaintiff at the trial introduced a writing dated soon after the date of the deed, whereby Ford leased to Hutchinson all the residue of the land, together with testimony tending to prove that the lease was agreed upon contemporaneously with the conveyance by the deed. The lease

was dated April 28, 1890, and was conditioned to expire April 1, 1892, with right to Hutchinson to hold one year more if not notified to quit at the expiration date. It recited that for the use and occupation of the land Hutchinson was to take good care of the premises. Defendants introduced evidence tending to prove the signature of Hutchinson to the lease to be a forgery. For the purposes of present consideration, the lease may be considered as genuine. The jury so found. The lease was for ''all that parcel of land containing 213 acres upon which one of the sons and a son-in-law of the said Hutchinson now reside.'' This is the land now in controversy. Plaintiff maintains that since defendants claim under James A. Hutchinson this lease estops them to deny the title of Ford under whom plaintiff claims. The lease is undoubtedly evidence of an admission of Ford's title on the part of Hutchinson. But simply because it is that it does not necessarily operate to estop Hutchinson, or defendants holding under him, from denying and contesting the title of Ford and those who hold under him.

No possession by James A. Hutchinson under the lease is shown unless we can say that he was in possession by his son and his son-in-law at the time the lease was executed and retained possession through them under the lease. We can not say that as tenant of Ford he retained possession through them. It has not been made to appear that the son and the son-in-law, who were on the land before the lease was made and remained thereon after it was made, were mere tenants of James A. Hutchinson. Indeed the only evidence in that regard tends to prove that they were on the land under parol gifts of a father to his children. It has not been made to appear that they ever had knowledge of the lease, or attorned to Ford as landlord. If it were shown that the son and the son-in-law were only on the land as tenants of James A. Hutchinson at the time he took the lease from Ford, we could well say that Hutchinson through them retained possession as tenant of Ford. But the only showing under the evidence in this particular is that they were on the land before and after the lease was made, not as tenants or in subordination to anyone, but under claim of independent right. Without agreement by them, the character of their holding could not be

73 W. Va.

changed.  If they held under sale or gift from James A.
Hutchinson, he could not change the character of their hold-
ing into a tenancy under Ford merely by his taking a lease
from Ford.

It must be conceded from the evidence that Hutchinson
never was in possession of the land under the lease, since, as
we have seen, he did not retain possession by those already on
the land.  No evidence appears of any individual possession
by him subsequent to the date of the lease.  The period of
tenancy for which the lease was made expired without his
taking possession under it.  The only possession of the land
after the date of the lease was that of the son and the son-in-
law.  At the date of the lease they were in possession, not for
him, but for themselves, and thereafter so remained, as far as
the case discloses.  The mere execution of the lease, without
possession thereunder, did not establish the relation of land-
lord and tenant between Ford and Hutchinson.  To warrant
the estoppel against denying the title of the landlord there
must be a tenancy in fact.  The lessee must go into possession
under the lease, or retain a possession that he already has, in
subordination to the title of the landlord.  The estoppel may
be invoked only against one in possession as tenant, or one in
possession through a tenancy and thus having no higher right
of possession than that under which he obtained possession.
"The foundation of the estoppel is the occupation of the
premises by the permission of the landlord.  The estoppel is
*in pais* and does not depend upon the lease but is founded upon
the possession, and is as operative after the conclusion of the
lease as before, and until that possession is ended.  A lessee
who never takes possession under the lease is not estopped to
deny the landlord's title."  24 Cyc. 937.  "Unless the tenant
has entered into possession under the landlord, or occupied
under the lease, the estoppel to deny the latter's title does not
arise."  18 Amer. and Eng. Enc. of Law, 414.

Thus we observe that defendants who claim under Hutch-
inson did not go into possession of the land through a holding
of Hutchinson as tenant of Ford, for Hutchinson never so
held.  No relation of landlord and tenant estopping defend-
ants from denying the title of plaintiff has been established.

Whether defendants through their claims of title from

James A. Hutchinson have made out or can make out good title need not be adverted to. Plaintiff must stand on its own title, not on the weakness of its adversary's title. Plaintiff, having proved no common source of title, nor shown any estoppel preventing defendants from denying its title, was not excused from tracing its title to the Commonwealth. It made no case entitling it to a recovery.

From what we have said it would seem that the errors in the giving and refusing of instructions to the jury, practically all of which cover the subjects we have discussed, will be fully appreciated and understood, without special reference thereto.

Much immaterial matter was lugged into the trial, in view of the reliance of plaintiff wholly on a common source of title, or an estoppel of defendants to deny plaintiff's title. All effort of defendants to show failure of plaintiff's title back of the common source on which plaintiff sought to rely, and the rebuttal of such effort by plaintiff, was plainly unnecessary and out of place. It does not matter whether the title which affords common source is good or bad. *Laidley* v. *Land Co.*, 30 W. Va. 505. This subject, however, is not worthy of further comment here.

There is but one other point to which reference need be made. Azel Ford, through whom plaintiff derived title, was a witness in relation to the execution of the lease in his favor by James A. Hutchinson. He testified as to the personal transaction of Hutchinson executing to him the lease, though Hutchinson was long since dead. Whether the lease was actually executed by Hutchinson was properly an underlying issue in the case. Yet Ford was incompetent as a witness to testify as he did, in effect that Hutchinson actually executed the lease to him. It was error to admit his testimony in this regard. He was a person through whom plaintiff derived title. He testified against the grantee of the person then deceased with whom he had had the personal transaction as to which he gave evidence. This was clearly violative of Code 1906, ch. 131, sec. 23. The word ''assignee'' in that statute includes a grantee. *Zane* v. *Fink*, 18 W. Va. 695.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed and Remanded.*