# CHARLESTON.

## HALSTEAD *et al.* v. ALIFF *et al.*

### Submitted May 16, 1916.    Decided May 23, 1916.

1. EQUITY—*Proof of Title—Admission in Answer.*

    In a suit to remove cloud upon plaintiff's title and to enjoin the cutting of timber on his land, admission in defendant's answer of a common source of title, though not alleged in the bill, will excuse plaintiff on the trial from proof of title back of the common source so admitted. (p. 482).

2. SAME.

    Such common source of title not being the foundation for the relief prayed for, but only a fact provable under the allegation of good title in plaintiff and no title in defendant, and possession, the proposition stated in the first point of the syllabus does not contravene the rule that admissions in an answer to a bill in chancery cannot lay the foundation for relief under any specific head of equity, unless substantially set forth in the bill. (p. 483).

3. INJUNCTION—*Jurisdiction in Equity—Title of Plaintiff.*

    Where plaintiff's title is clear, as matter of law, and resort to a jury trial on questions of fact is unnecessary, equity will take jurisdiction to enjoin trespass and remove cloud upon the title to land. (p. 483).

4. BOUNDARIES—*Description—Construction.*

    The closing call in a deed from "a large Yellow Pine and Maple, 2 poles West of middle fork of Ugly, thence by protraction with the general course of Ugly down, S. 32 degrees W. 170 poles to the beginning", a "white oak on the bank of Ugly

Branch'', properly construed with reference to the facts proven in this case, is a call for a straight line between the two termini, and not for the water course, as the boundary line. (p. 483).

Appeal from Circuit Court, Raleigh County.

Suit by Henry A. Halstead and others against Robert Aliff and others. From decree for defendants, plaintiffs appeal.

*Reversed, and decree entered for plaintiffs.*

*J. E. Summerfield* and *Bumgardner, Preston & Dunn,* for appellants.

*John M. Anderson* and *McGinnis & Hatcher,* for appellees.

MILLER, JUDGE:

The bill alleges title and possession by plaintiffs, and seeks an injunction restraining defendants from cutting timber upon plaintiff's land. The answer of defendants alleges a common source of title, not alleged in the bill, and admits that plaintiffs' immediate title deed covers the land in controversy, but alleges the same to be also covered by a contract for a deed older than plaintiffs' deed, and by the immediate deed to defendants, exhibited therewith. Testimony was taken on behalf of plaintiffs only.

The question presented is, whether properly construed the call in the deed from Francis Granger, and others, to Cyrus Snuffer, under which plaintiffs claim, dated October 15, 1860, from ''a large Yellow Pine and Maple, 2 poles West of middle fork of Ugly, thence by protraction with the general course of Ugly down, S. 32 degrees W. 170 poles to the beginning'', a ''white oak on the bank of Ugly Branch,'' is a straight line between these two points, or a line coincident with the water course referred to. If as plaintiffs claim the line is a straight line then the land in controversy is conceded to be their land; but if as defendants contend the line is coincident with the running of the water course called for by the immediate deed from Trail and others, to Mrs. Aliff, of April 16, 1894, then the land belongs to her. The decree appealed from denied plaintiffs any relief and dismissed their bill.

In support of this decree it is contended that as plaintiffs' bill does not allege a common source of title, though this fact is alleged and admitted in the answer, and the answer was replied to generally, and plaintiffs did not prove title back to the Commonwealth, or actual possession of the land in controversy, jurisdiction in equity to quiet title and enjoin trespass cannot be maintained, and that relief in equity was properly denied.

Defendants' immediate deed exhibited with their answer is subsequent in date to the immediate deed to plaintiffs, and although their answer alleges that they claim under one Patton, whose contract with the Grangers, the common source of title, for a tract of 375 acres, antedated the deeds under which plaintiffs claim, that contract is not exhibited or proven, and according to the description of the land covered thereby, one of the boundary lines thereof recited in the answer seems to be coincident with the closing line of the deed from Granger and others to Cyrus Snuffer, under whom plaintiffs claim, the call being for the reverse of the course given in the Snuffer deed, namely, "thence by protraction with general course of Ugly up said creek N. 32 degrees E. 306 poles to the beginning." Plaintiffs distinctly locate corners called for in the deeds by reference to the timber called for, at least, and defendants offered nothing to the contrary.

The first question is, can plaintiffs rely on common source of title, admitted in the answer, to excuse proof of title beyond that source? It is contended that having replied generally to the answer, the fact of a common source of title was put in issue thereby, and, though admitted in the answer, could not be relied on without amendment of the bill. But the bill substantially alleges good title in the plaintiffs, and possession thereunder, and that the defendants have no title to the land in controversy. Plaintiffs introduced their title deeds back to and including the deed from Granger and others, and they might have been required, but for this admission, to go back of the Granger deed and show title derived from the Commonwealth. The admission in the answer, we think, excused plaintiffs from extending their evidence of

title back to the Commonwealth. Common source of title was a fact provable under the allegations of the bill as made, and no amendment was required for that purpose. This fact was not a matter of defense, quite the contrary, and general replication did not put it in issue.

The rule of practice invoked by the defendants is, that no admissions in an answer to a bill in chancery can lay the foundations for relief under any specific head of equity unless it be substantially set forth in the bill. *Jackson* v. *Ashton,* 11 Peters 229. Common source of title does not constitute the foundation of the relief prayed for. Wherefore, the rule does not apply.

Nor does jurisdiction in equity depend upon this fact alone. If the plaintiffs' title is clear, and no question of fact is involved requiring the intervention of a jury, the rule of *Harman* v. *Lambert,* 76 W. Va. 370, 85 S. E. 660, relied upon by defendants, is inapplicable. In such cases the rule laid down in the recent case of *Ephraim Creek C. & C. Co.* v. *Bragg,* 75 W. Va. 70, and *Myers* v. *Bland,* 77 W. Va. 546, 87 S. E. 868, namely, that where the plaintiff's title is clear, as matter of law, and resort to a jury trial on questions of fact is unnecessary, equity will take jurisdiction to enjoin trespass or remove cloud upon the title to land.

The next and only question involving jurisdiction or the right to relief, is, have the plaintiffs shown such clear title as calls for the interposition of a court of equity? There is no question of fact involved; the case stands on the evidence of the plaintiffs alone; the defendants took no proof. Plaintiffs' deed is the oldest in time, and they have had possession, not by enclosure or with their feet actually upon the ground in controversy, but possession which goes with occupancy and residency upon the land included within their boundary, and the defendants do not pretend to have had actual possession, but occupancy only of their land outside of the land in controversy, and the only deed which they claim covers the land in controversy is the immediate deed to them of 1894.

So the question presented is one of law, namely, whether the closing line in the deed from the Grangers to Snuffer, of 1860, above described, and which is apparently coincident

with the closing line in the alleged contract of the Grangers
with Patton, described in the answer, is a straight line run-
ning from the yellow pine and maple, near the middle fork
of Big Ugly creek, point 1 on surveyor Scarborbough's map,
S. 47° 35' W. to the white oak, at point 5 on said map, as
the plaintiffs claim, or, as the defendants claim, is by proper
construction coincident with the course of the creek. The
proof is that this creek is about ten feet in width from bank
to bank, and though it has a defined course, is one which at
ordinary stages of the water one can step across. As we
have already said, the termini of the line in controversy, the
yellow pine and maple, and the white oak, are definitely
located on the ground and proven, and the call in the deed
from Granger, and others, to Snuffer, is, as already stated,
"thence by protraction with the general course of Ugly
down, S. 32 degrees W. 170 poles to the beginning."

Certainly the course called for between the two points
would naturally be a straight line. But it is contended that
the words "general course of Ugly", the creek being a nat-
ural object, controls the course and distance. We do not
think this a proper construction of the deed. We think this
deed was plainly intended to cover the bottom land upon
both sides of this stream. The deed does not call for "run-
ning with the creek", or "along the creek", or "to the creek",
or "with the general courses thereof", for as laid down on
the plat by the surveyor it has numerous courses, some of
them running almost at right angles to a straight line be-
tween the two points. The call of the deed is to run with
the general course of the creek, and a straight line run be-
tween the termini called for does that. This case is unlike
*Brown Oil Co.* v. *Caldwell*, 35 W. Va. 95, relied on. The
controversy there was between two lessees in oil leases from
a common lessor; the senior lease called for the bank of the
Ohio river, thence "down said river S., 62° W., 81 6-10 poles,
to a stake on point at mouth of French creek", and the
question was whether this lease carried the lessee to low water
mark on the river, or bound him to the top of the bank, for
the lessor had undertaken to make another lease to a junior
lessee for that part of his land lying between the top of the

bank and ordinary low water mark. The language of the senior lease in that case is quite different from the call of the deed involved in this case, and can have very little force as a precedent for the decision of the case at bar. Neither of the termini called for in the Snuffer deed, as proved and located by the surveyor, is located upon Big Ugly creek, and to hold that the line between these two points is coincident to the creek would result in an impossible description. Moreover, the evidence shows that the plaintiffs have had fields enclosed and cultivated south of the creek, and up to the straight line, and that their fences have crossed this creek nearly if not quite up to the line claimed by them, and that they have had such possession for ten or fifteen years, though, as already stated, they have had no enclosures of the lands in controversy, which is in woods.

One of the precedents cited and much relied upon by defendants is *Wharton* v. *Brick*, (N. J.) 6 Atl. 442. The second point of the syllabus in that case is as follows: "A line described as running from a fixed monument, on the edge of a branch, *up the same*, by a single course, to another fixed monument on said branch, construed to follow the straight line called for from monument to monument, and not to follow the windings of the branch, unless the words 'the several courses thereof,' or 'the general course being', or some such language, be used. In such description, the words '*up* the branch', by a single course, means running in that direction on a straight line." We think this case is against rather than in favor of the construction contended for by defendants.

Our conclusion, therefore, is to reverse the decree, and to enter such decree here as we think the circuit court should have entered, decreeing the plaintiffs the relief prayed for.

*Reversed, and decree entered for plaintiffs.*