# CHARLESTON.

BLUEFIELD MILLING Co. *v.* WESTERN UNION TELEGRAPH Co.

(No. 5983)

Submitted September 14, 1927.    Decided September 20, 1927.

1. TELEGRAPHS AND TELEPHONES—*Proof of Unreasonable Delay in Transmitting Message Creates Presumption of Negligence by Telegraph Company, Putting on it Burden of Showing Exculpatory Facts or Circumstances.*

    Proof of an unreasonable delay in the transmission of a message by a telegraph company, creates a presumption of negligence on its part, and casts upon it the burden of showing exculpatory facts or circumstances. (p. 154.)

    (Telegraphs and Telephones, 37 Cyc. pp. 1729, 1730.)

2. SAME—*Wire Trouble Held Not to Excuse Delay in Transmitting Telegram, Where Telegraph Company Had Notice of Urgent Nature.*

    Wire trouble is not a legal excuse for the failure of a telegraph company to promptly transmit a message, which, upon

its face and because of information possessed by the company in regard thereto, conveys notice of the requirement for dispatch in its transmission, where the existence and extent of the wire trouble are known to the company at the time the message was accepted, and these facts are not communicated to the sender.   (p. 154.)

(Telegraphs and Telephones, 37 Cyc. p. 1667.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error from Circuit Court, Mercer County.

Trespass on the case by the Bluefield Milling Company against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Russell S. Ritz,* for plaintiff in error.
*Arthur F. Kingdon,* for defendant in error.

LIVELY, JUDGE:

This was an action of trespass on the case by defendant in error, the Bluefield Milling Company, to recover from the plaintiff in error, the Western Union Telegraph Company, damages for delay in the transmission of a telegram. On a demurrer to the evidence by the Telegraph Company, judgment was entered in favor of the plaintiff for $300.00. This writ followed.

The plaintiff Milling Company was engaged in the manufacture of flour. It appears that in the milling business it is customary to "hedge" the market, that is, when the miller enters into a contract for the delivery of flour at a future date, he buys wheat on the stock exchange for future delivery, and when he purchases wheat for actual delivery from the grain elevator to fulfill the contract which he had previously made to furnish flour, he sells that wheat which he has bought on the stock exchange. In this way he protects himself against possible loss due to changing conditions in the actual market. In accordance with this plan, the plaintiff Milling Company, on August 10th, 1925, sent a telegram to the Uhlman Grain Company, Chicago, advising them to "Sell 10

Sept wheat at the market.'' This message was delivered to defendant Company at Bluefield, West Virginia, at 12:42 P. M. Eastern time, but it did not reach its destination in Chicago until 12:25 P. M. Central time, forty-three minutes after it had been delivered at the Bluefield office of the defendant company, and ten minutes after the close of the stock exchange at Chicago. Upon a sale by the brokers on a falling market the next day, the plaintiffs suffered a loss of $425.00.

The basis of the plaintiff's cause of action is the negligence of the defendant Company in failing to send and deliver the message at its destination within a reasonable time, considering the character of the telegram, the apparent necessity for its rapid transmission, and the time within which such messages are usually sent between Bluefield and Chicago.

After proving that forty-three minutes had elapsed between the receipt of the message by the defendant at Bluefield and in its transmission and delivery in Chicago, ten minutes after the stock exchange had closed, the plaintiff introduced evidence to the effect that the usual time required for sending messages between Bluefield and Chicago was from eight to fourteen minutes; that had the message been delivered within a reasonable time, the plaintiff would not have been forced to sell its wheat at a loss; that the first knowledge plaintiff had of the delay was a telegram on August 10th, from its Chicago brokers, saying that the selling order had been received after the close of the exchange. It was also shown that the defendant Company maintained a ''C. N. D.'' service by which it furnished plaintiff and others quotations from the stock exchange at Chicago, at regular intervals during the day. No charge was made for this service. Plaintiff offered, but it was not permitted, to show that if it had received information of the probable delay in the transmission of the message, it could have taken steps to have had the telegram sent more promptly. The failure to permit the introduction of this evidence is assigned cross-error.

Plaintiff also attempted to prove that the local manager of the defendant Company at Bluefield had admitted that the telegram had been unduly delayed at Bluefield. The

Court refused to permit this evidence to go in, and this is also assigned as cross-error.

The defendant introduced evidence to the effect that the telegram in question was handled in its regular order along with other messages of a similar classification; that on August 10th, the regular wire from Bluefield to Huntington over which Chicago messages were sent, could be used only to a limited extent, due to the alternating current thereon, caused by the N. & W. Ry. Co's. high tension wires located near to and parallel with defendant's wire between Bluefield and Huntington; that this condition continued during the morning of the 10th and up until shortly after one o'clock that afternoon, at which time there were at least seventeen messages ahead of that of the plaintiff; that plaintiff's message was held in the Bluefield office twenty-five minutes before it was transmitted; that it could not have been dispatched any sooner by way of the Richmond wire, which, in cases of necessity, was sometimes used to send messages from Bluefield to Chicago, because of other messages ahead of it; that the usual time required for sending messages from Bluefield to Chicago was from twenty-six to twenty-eight minutes.

It appears from the evidence that the defendant Company had on numerous other occasions experienced similar trouble with its Bluefield to Huntington wire, caused by the Railway Company's high tension wires.

After both sides had rested, defendant demurred to the evidence, whereupon the Court, finding the law to be for the plaintiff, entered up judgment on the jury's verdict of $300.00, a sum agreed upon by the parties.

The defendant contends that the Court should have sustained its demurrer, because there was no evidence establishing negligence on the part of defendant in the handling of plaintiff's message. It is further argued that even if it should be held that the plaintiff's evidence established a *prima facie* presumption of negligence, yet the defendant is not an insurer of the prompt transmission and delivery of messages entrusted to it, and it has clearly rebutted any presumption of negligence by showing that under the facts of the instant

case it exercised a reasonable degree of care in handling plaintiff's message.

On this demurrer has the plaintiff made out a case?

On a demurrer to the evidence the rule is that the demurrant is considered as conceding the truth of the evidence demurred to and all reasonable inferences deducible from it. *Gregg* v. *City of Morgantown,* 77 W. Va. 171, 173. And where the evidence of the demurrant conflicts with that of the demurree it is regarded as overcome unless it decidedly preponderates. *Barrett* v. *Coal & Coke Co.,* 55 W. Va. 395.

It is well settled that proof of an unreasonable delay in the transmission of a message creates a presumption of negligence on the part of a telegraph company and casts upon it the burden of showing exculpatory facts or circumstances. Vol. 2 Jones' Commentaries on Evidence (2nd Ed.) Section 506, page 913; Jones on Telegraph and Telephone Companies (2nd Ed.) Section 509, pages 646 and 647. The plaintiff's evidence was to the effect that the usual time required for the transmission and delivery of telegrams from Bluefield to Chicago was from eight to fourteen minutes, and the defendant's conflicting evidence on this point did not preponderate decisively. This created a *prima facie* case in plaintiff's favor and cast upon defendant the burden of showing extenuating circumstances. Therefore, it does not become necessary to decide whether the Court should have admitted the statement or admission attributed to the defendant's Bluefield manager, to the effect that the telegram had been unduly delayed, and that the delay had occurred in the Bluefield office. However, there is authority which would seem to sanction the admission of such a statement. Vol. 2 Mechem on Agency (2nd Ed.) section 1780, page 1353.

Even though it should be conceded that the unsatisfactory condition of the defendant's Bluefield to Huntington wire on August 10th, 1925, was such a circumstance as to excuse the delay in the transmission of the plaintiff's message, yet the defendant Company had knowledge of this condition at the time it accepted the telegram, which on its face and because of defendant's knowledge that the stock exchange closed at 12:15 PM Central time, conveyed notice that it must be sent.

with promptness. It accepted this message for a consideration then paid, under the implied contract that it would make prompt transmission and delivery, knowing of an existing and present impediment in its wires. Plaintiff did not know of the claimed inability to promptly transmit. This is not the case where some accident or adventitious circumstance over which a contracting party has no control intervenes and excuses him from its performance. This cause did not intervene. It was a fact existing at the time the contract was formed and had existed all that morning. Wire trouble is not a legal excuse where its existence and extent were known to the company when the message was accepted, and the facts not communicated by it to the sender. 37 Cyc. page 1667. A common carrier can not avoid liability for non-delivery of goods in due and reasonable time because of some known defect in its rolling stock. Defendant took the chance of a prompt delivery in the face of a known cause which might prevent it from so doing. Of course, if the sender of the message had been informed of the condition of the wires and paid his money knowing it might not be delivered, he took a chance and probably could not recover. But such is not the case here. He was not so informed. As defendant knew that it was unable to send plaintiff's message with the required dispatch, it should have notified plaintiff in order that it might have had an opportunity to have accomplished its purpose in some other available manner. See cases cited in note 17 A. L. R. page 111. This the defendant did not do; and it does not clearly appear that there was no other way the message could have been transmitted before the market closed.

The judgment will be affirmed.

*Affirmed.*