HOWARD G. CONNER v. EARL JARRETT et al.

(No. 8736)

Submitted October 18, 1938.    Decided November 22, 1938.

*Taylor & Taylor*, for plaintiffs in error.

*H. L. Snyder* and *Mohler, Peters & Snyder*, for defendant in error.

Fox, Judge:

Earl Jarrett and Dorothy K. Jarrett prosecute this writ error to a judgment of the circuit court of Kanawha County, entered on the 13th day of September, 1937, in an action of ejectment in which Howard G. Conner was plaintiff and the Jarretts were defendants. The judgment complained of was rendered on a demurrer to the evidence interposed by the plaintiff below.

The controversy in general involves the ownership of a small lot of land on Mink Shoal Branch, a tributary of Elk River, and particularly the location of three lines representing the boundary between the lands of the litigants, and must be determined, as we view the case, from three deeds which will be hereafter mentioned and discussed.

The lands of both the plaintiff and defendants below have a common source of title, within the meaning of the rule in ejectment actions, that where there is a common source of title, proof of title need not go beyond that common source. *Winding Gulf Colliery Co.* v. *Campbell,* 72 W. Va. 449, 78 S. E. 384; *James' Sons Co.* v. *Hutchinson,* 73 W. Va. 488, 80 S. E. 768. The rule is based on the doctrine of estoppel, and where it is established by proof that both parties to an action of ejectment derived title from the same third person, such proof is *prima facie* sufficient to establish such common source without proof that such third person had title to the land conveyed by him. *Laidley* v. *Land Co.,* 30 W. Va. 505, 4 S. E. 705; *Low* v. *Settle,* 32 W. Va. 600, 9 S. E. 922; *Carrell* v. *Mitchell,* 37 W. Va. 130, 16 S. E. 453. The deed establishing common source is that of R. H. Early to Greenbury Melton, dated April 5, 1855, conveying a tract of 291¾ acres of land. On April 16, 1877, Melton conveyed to Felix Myer, out of this boundary, a tract of 8 acres and 20 perch, the first four calls of which deed are: "Beginning at a stake and corner to Original sur-

vey and with same N 50 E 12 poles to stake and pointers on bank of Mink Shoal Branch thence up same N 50 W 41 poles 14 links to sycamore thence N 35 W 10 poles to stake thence N 51 W 36 poles to stake corner M Hass * * *", and title to this land passed by mesne conveyances to the plaintiffs in error, defendants below. On February 6, 1883, Melton conveyed to James F. Rock, out of the 291¾ acre tract, 59 acres of land, the first and last four calls of which are, as set out in the deed of conveyance, as follows: "Beginning at a stake in a wagon road at the *foard* of the said Mink Shoal Branch in a line of a survey of 8 acres of Felix Myers and running thence up the Road N. 27¾° E. 11 poles & 10 links to a stake in the Road * * * S. 12° E. 22 poles to a stake on the West bank of the said Mink Shoal Branch corner to the aforesaid 8 acres thence with three lines of same still down the branch S. 51° E. 37½ poles to a stake S. 35 E. 10 poles to a sycamore on the east bank of the branch S. 50° E. 41 poles & 14 links to the beginning * * *." It will be observed that the last three calls of the Rock deed are identical with the second, third and fourth calls of the Felix Myer deed as to course, and vary only as to the distance in the call of N. 51 W., the Myer deed calling for 36 poles, and the Rock deed 37½ poles, and in the Myer deed the sycamore called for at the end of the call N. 51 W. is not located at any particular place, whereas in the call of the Rock deed, it is located on the east bank of Mink Shoal Branch. However, no question is raised as to the two sets of calls not being identical, and none could be reasonably asserted. It is apparent, therefore, that the location of the disputed lines must be governed by the calls of the Felix Myer deed, it being senior to the Rock deed, and that deed expressly calling for the lines of the senior grant. *Miller* v. *Holt,* 47 W. Va. 7, 34 S. E. 956; *Robinson* v. *Sheets,* 63 W. Va. 394, 61 S. E. 347.

The plaintiff below, admitting that the calls of the Felix Myer deed for the 8 acres and 20 perch must govern in the location of the lines of his own land, says: first, that the first call of the Myer deed terminates at a

natural monument, the bank of Mink Shoal Branch, and must control, and establishes the utmost limit to which the eastern lines of the Myer tract can extend, and that the call running in an easterly direction would end when it reached the west bank of the branch, and firmly and irrevocably fixed the corner of the Myer tract at that point; second, that under recognized rules of surveying, and established principles of law, a line calling for the bank of a non-navigable stream will be extended to the center of the stream; and third, that the second, third and fourth calls of the Myer deed must, notwithstanding the definite courses and distances used, be construed as running with the stream *ad medium filum aquae,* and therefore the center of Mink Shoal Branch is the true line of his land. To combat these claims, the defendants below depend upon surveys of courses and distances called for in their deeds, upon testimony tending to show marked line or corner trees in the line claimed by them, and certain statements of their predecessors in title tending to support their contentions. There is some evidence as to possession coming from both sides of the case, but it tends to confuse rather than enlighten the court. It is not clear that there ever was continuous and uninterrupted possession for the statutory period, by either party, of any part of the land in dispute, and we think the trial court was correct in ignoring all evidence as to possession. The same may be said of the statement of the plaintiff, Conner, that he did not claim a small strip of land between what is called an old road and Mink Shoal Branch, which, under the order of the court, was awarded to him. This whole controversy was one involving the location of a boundary line and should be decided on that basis.

At the conclusion of all the testimony offered in the case, motions for a directed verdict were made by plaintiff and defendants, respectively, and overruled; the plaintiff then demurred to the evidence of the defendants, and over their objection, they were required to join in the demurrer. The court, according to its order, "having

maturely considered all the evidence submitted to the jury, both that submitted on behalf of the defendants and as well so much of that submitted on behalf of the plaintiff as is not in conflict with the competent evidence submitted on behalf of the defendants, and also the law as applicable to the same", sustained the said demurrer and rendered judgment for the plaintiff on the conditional verdict of the jury in his favor for a fee simple estate in the tract of 59 acres of land described in his declaration, and $75.00 damages, the court fixing the median line of Mink Shoal Branch from the state highway culvert crossing said branch up to the Mike Haas line, as the division line between the lands of the litigants. Exception to this action of the court was taken at the time.

The errors assigned by the plaintiffs in error are: (1) Refusal to direct a verdict in their favor; (2) the entertaining of plaintiff's demurrer to the evidence and requiring their joinder therein; and (3) the action of the court in sustaining the demurrer and rendering judgment for the plaintiff. The first and third assignments cover the same subject and will be considered together. We will first consider the second assignment.

The right of either party to an action at law, plaintiff or defendant, under proper conditions, to demur to the evidence of his adversary, is firmly grounded in our practice and is no longer the subject of serious dispute. *Merchants' Bank* v. *Evans*, 9 W. Va. 373; *Shaw* v. *County Court*, 30 W. Va. 488, 4 S. E. 439; *Reiniger* v. *Piercy*, 77 W. Va. 62, 86 S. E. 926, 27 West Virginia Law Quarterly 236. In *Bennett* v. *Perkins*, 47 W. Va. 425, 35 S. E. 8, it was held that "either party has a right to demur to the evidence, but the demurrer is only applicable to the evidence of the party holding the affirmative of the issue", and this, for a time, created some confusion as to what "affirmative of the issue" meant as the same relates to demurrers to evidence. *Gunn* v. *Ohio River Rr. Co.*, 42 W. Va. 676, 26 S. E. 546, 36 L. R. A. 575; *Shaver* v. *Edgell*, 48 W. Va. 502, 37 S. E. 664. But it is now well established that a plaintiff who has made a *prima facie*

case may demur to the evidence of a defendant who attempts to break down the case so made. *Bowman* v. *Dewing & Sons,* 50 W. Va. 445, 40 S. E. 576; *Barrett* v. *Coal & Coke Co.,* 55 W. Va. 395, 47 S. E. 154; *Reiniger* v. *Piercy, supra.* This theory is supported by the fact that in ejectment cases where, as a general rule, a plaintiff must recover on the strength of his own title (*Bradley* v. *Ewart,* 18 W. Va. 598; *Witten* v. *St. Clair,* 27 W. Va. 762; *Low* v. *Settle, supra; Holly River Coal Co.* v. *Howell,* 36 W. Va. 489, 15 S. E. 214; *Maxwell* v. *Cunningham,* 50 W. Va. 298, 40 S. E. 499; *Taylor* v. *Russell,* 65 W. Va. 632, 64 S. E. 923), the use of demurrers to evidence on the part of the plaintiff is quite common, as disclosed by the decisions of this court. *Hall* v. *Webb,* 21 W. Va. 318; *Bowman* v. *Dewing & Sons, supra; Wilson* v. *Braden,* 56 W. Va. 372, 49 S. E. 409, 107 Am. St. Rep. 927; *Robinson* v. *Sheets, supra.* All the evidence in the case should be included in the demurrer. *Muhleman* v. *Insurance Company,* 6 W. Va. 508; *Garrett* v. *Ramsey,* 26 W. Va. 345; *Mapel* v. *John,* 42 W. Va. 30, 24 S. E. 608, 32 L. R. A. 800, 57 Am. St. Rep. 839; *Berkeley* v. *C. & O. R. Co.,* 43 W. Va. 11, 26 S. E. 349; *Chapman* v. *Charter,* 46 W. Va. 769, 34 S. E. 768; *Bowman* v. *Dewing & Sons, supra; Finance Co.* v. *Bailey,* 106 W. Va. 651, 146 S. E. 723; *Ashley* v. *Lumber Co.,* 79 W. Va. 726, 91 S. E. 813. This requirement is substantially complied with where, as in this case, it clearly appears that all the evidence was before the court when it considered and acted on the demurrer. It is true that joinder was required on the part of the defendants before all the evidence for the plaintiff had been transcribed, but the order of the court plainly indicates that a transcript of all the evidence was contemplated, and the joinder was required at that time merely to save delay. This was on July 16, 1937. On September 13th, following, the final judgment was entered, and in the order made on that day it appears that all the evidence was before the court for consideration. To hold that all the evidence was not incorporated in the demurrer at the time it was finally acted upon would be

to sacrifice substance to form. The position taken by the defendants below that they were entitled to have all the evidence considered was, in substance, fully sustained, and they were in no sense prejudiced by any technical defect in the procedure followed. The evidence should be interpreted "most benignly" in favor of the demurree. *Garrett* v. *Ramsey, supra; Talbott* v. *Railway Co.,* 42 W. Va. 560, 26 S. E. 311; *Truschel* v. *Amusement Co.,* 102 W. Va. 215, 136 S. E. 30; *Calloway* v. *Casualty Co.,* 113 W. Va. 339, 167 S. E. 877.

Having stated the general principles which we hold control the use of demurrers to the evidence, we are brought to the question raised by the plaintiffs in error as to whether, under the circumstances of this case, the requirement that they join in the demurrer of the plaintiff was justified. The plaintiff, having in our judgment made a *prima facie* case on the evidence introduced on his behalf, was entitled to recover, unless the case made by the defendants was sufficient to break down the case made by the plaintiff. On that issue, the defendants had the burden and if, as a matter of law, the evidence introduced by them was insufficient to overcome the *prima facie* case made by the plaintiff, then on a demurrer to the evidence the plaintiff should prevail, taking into full consideration the burden of proof resting on him as to the entire case, and the general rule that he must recover on the strength of his own title. Under such circumstances the trial court was clearly right in requiring a joinder in the demurrer.

A question is raised as to whether all the evidence was made a part of the demurrer and considered by the court. The order of the trial judge states that he considered all the evidence submitted by the defendants, and that part of the plaintiff's evidence not in conflict with the competent evidence of the defendant. He could not have differentiated between the different types of the plaintiff's evidence, if such there was, without examining the same, and we think it clear that all the evidence in the case was before the court, and if certain parts of the plain-

tiff's evidence were not considered because of their conflict with evidence for the defendants, it is not a matter of which the defendants can complain, for, as we shall presently show, the court had the right to consider all the evidence, conflicting or otherwise.

This brings us to the important question as to what evidence may be considered by the court on a demurrer to the evidence. Of course, all the evidence of the demurree must be considered, and the question relates to the evidence of the demurrant. The rule that only that part of demurrant's evidence which was not in conflict with that of the demurree long prevailed in this jurisdiction. In *Muhleman* v. *Insurance Co., supra,* it was held that "the demurrant must be considered as admitting all that can reasonably be inferred by a jury, from the evidence given by the other party; and as waiving all the evidence on his part which contradicts that offered by the other party, or the credit of which is impeached", and this holding is followed in a long line of cases decided by this court. This strict rule has been relaxed in an important particular, and under the modern and prevailing rule the demurrant is not now required to waive any part of his evidence. In *Mapel* v. *John, supra,* it was held: "By demurring to evidence the demurrant is now, under section 9 of chapter 131, not held to waive any part of his competent evidence; but where it conflicts with that of the other party it will be regarded as overborne, unless it manifestly appears to be clearly and decidedly preponderant." In *Bowman* v. *Dewing & Sons, supra,* it was held that "The proper rule on demurrer to evidence in this State appears to be that the court should consider the evidence on both sides as though the demurrer was a motion to set aside the verdict of a jury in favor of the demurree, and if the court would not set aside such verdict on consideration of the whole evidence it should overrule the demurrer and enter judgment for the demurree." Citing *Lewis* v. *C. & O. Rr. Co.,* 47 W. Va. 656, 35 S. E. 908, 81 Am. St. Rep. 816. It follows that the converse of the proposition would be true. In *Bar-*

*rett* v. *Coal & Coke Co., supra,* this court squarely faced the conflict between decided cases on the subject, and adhered to the cases of *Mapel* v. *John, supra; Talbott* v. *Railroad Co., supra;* and *Teel* v. *Ohio River Rr. Co.,* 49 W. Va. 85, 38 S. E. 518. In the *Barrett* case, it was held:

> "On demurrer to evidence, if it be conflicting, judgment in favor of demurree should be given, unless the evidence plainly and decidedly preponderates in favor of demurrant on some decisive point * * * . If the evidence though conflicting, plainly and decidedly preponderates in favor of the demurrant, on some decisive point, the demurrer should be sustained, and judgment should be given for the demurrant."

The *Barrett* case was followed in *Miller* v. *Johnson,* 79 W. Va. 198, 90 S. E. 677, and *Bluefield Milling Co.* v. *Telegraph Co.,* 104 W. Va. 150, 139 S. E. 638, 55 A. L. R. 636, and the rule therein announced seems to be settled law, so much so that it now appears to be recognized that the rule as to conflicting evidence is the same, whether the question is raised on a motion to direct a verdict at the conclusion of all the evidence, a motion to set aside a verdict, or on demurrer to the evidence. The only apparent advantage to a litigant, arising from the use of a demurrer to the evidence over a motion to direct a verdict, is that a reversal of the ruling of the trial court on a motion to direct a verdict usually calls for a new trial, whereas, on a proper demurrer to the evidence, and joinder therein, the case is brought to a final conclusion on the record as made when the demurrer is interposed.

Being of the opinion (1) that the plaintiff, under the circumstances of this case, had the right to demur to the evidence, and that the trial court properly required the joinder of the plaintiffs in error therein; (2) that the trial court had before it all the evidence in the case, and gave consideration to all such evidence which in any way supported the claims of the defendants; and (3) that on such demurrer the trial court had the right to consider

conflicting evidence and render judgment for the demurrant if the evidence introduced by him plainly and decidedly preponderated over that of the defendants, we now come to the vital question, namely, did the trial court err in sustaining the demurrer to the evidence interposed by the plaintiff and rendering judgment in his favor?

It should be said at this point that while in our discussion of the law relating to a demurrer to the evidence, we have adverted to the right of the court to consider and pass upon conflicting evidence under certain conditions, we do not think that question important in the case at bar. The conclusion at which we have arrived herein does not, in our judgment, involve conflicting evidence. It is based, first, on the location of a corner at a natural monument called for in the deed which first conveyed the particular tract of land now claimed by the plaintiffs in error; and, second, the application of a rule of law governing the location of a line or lines beginning at a stream and running up or down the stream with specific courses and distances given to further describe the line; there is not, and cannot be, any conflict of evidence on these propositions.

This being true, what are the facts? As we have shown, the lines in dispute are accepted by all parties as being identical, and it is not questioned that resort must be had to the lines of the 8 acres and 20 perch now owned by the Jarretts to locate the lines of the land owned by Conner, for the reason that the Jarrett tract was first conveyed, and the calls in the deed under which Conner claims run with the Jarrett tract. We find that in the original deed for the land now owned by the Jarretts, being that of Melton to Myer, dated April 16, 1877, the first call is "S. 50 E. 12 poles to a stake and pointers on bank of Mink Shoal Branch." The evidence is overwhelmingly that Mink Shoal Branch at that point is now where it was in 1877. How, then, can those who hold under this deed contend that this call can possibly be held to extend beyond Mink Shoal Branch? Both course and

distance must give way to established monuments. Whether this line which called for 12 poles reached the branch in a smaller or greater distance is immaterial. The branch is the monument called for and when that is reached, the end of the line is established. It is unimportant at which bank of the branch the stake called for is located, as the center of the stream is ordinarily held to be intended, in cases where the circumstances do not call for a different conclusion. Many cases could be cited in support of the proposition that established monuments, not courses and distances, control. It is sufficient to cite *Matheny* v. *Allen*, 63 W. Va. 443, 60 S. E. 407, 129 Am. St. Rep. 984, wherein it was held:

> "It is a general rule that, in locating boundaries of land, resort is to be had first to natural landmarks, next to artificial monuments, then to adjacent boundaries, and last to courses and distances."

Here we have not only a monument but a natural landmark, which should be given the highest consideration. But this is not all. On February 6, 1883, the same Melton who conveyed the 8 acres and 20 perch to Myer, conveyed 59 acres of land out of the same larger tract to James F. Rock. This is the land now claimed by Conner. In that deed, the beginning corner is "a stake in a wagon road at the *foard* of the said Mink Shoal Branch, in a line of a survey of 8 acres of Felix Myers." The lines of the 59 acres come back to this beginning corner by the use of the fourth, third and second calls of the Myer land, and from this it clearly appears that the beginning corner of the 59 acres and the end of the first call of the Myer tract were understood to be, and are, one and the same; so that we have two deeds executed by Melton fixing this particular corner at Mink Shoal Branch, one of them further defining its location at a ford. It is undisputed that the ford referred to was located at the point where the state highway now crosses Mink Shoal Branch. We, therefore, have no difficulty in holding that the cen-

ter of Mink Shoal Branch at the culvert crossed by the state highway is the beginning corner of the tract of 59 acres owned by Conner, and a corner to the land owned by the plaintiffs in error.

This corner being fixed, how shall the three lines involved in this controversy be established on the ground? Both the Melton deeds under which the parties claim call for the lines as running up or down the stream, depending on whether the calls in the deed first executed or the second deed are used. The point at which the Conner tract comes back to the Jarrett tract is described as a "stake on the West bank of the said Mink Shoal Branch corner to the aforesaid 8 acres"; the call S. 35 E. 10 poles in the deed for the land claimed by Conner runs to "a sycamore on the east bank of the branch", so that we have a stake on the bank of the branch at both the beginning and the end of this three course division of these two tracts of land, and at one corner between, a sycamore on the bank of the branch, and the lines are called to run up and down the branch. When we examine the lines as laid down on the plats introduced in evidence, we find that, using the center of the branch as the termini and following the courses and distances designated in the title papers, the lines closely follow the branch. If courses and distances are followed, the branch would be on both sides of the division line, and would include land on the opposite side of the branch from the body of land owned by the respective parties. It is significant that three lines were used in the Myer deed to compose the eastern boundary; their use cannot be reasonably explained unless it was intended thereby to follow the creek. It will be noted that in the calls of the Myer deed, the courses of two of the lines, the second and fourth, are practically the same, one being N. 50 W. and the other N. 51 W., and but for the turn in the line N. 35 W., made by the third call apparently to conform to the course of the branch, the eastern boundary would have been practically a straight line. Then, too, the circumstances surrounding the conveyances of these two tracts of land may

be considered. Melton was the owner of a large tract adjoining the land he was conveying to Myer. Myer wanted the land lying between land already owned by him and Mink Shoal Branch, because he wanted to get to the water and the road. In those days the road was in the creek for a part of the way along the lines of the land conveyed to Myer. Witnesses testified that Myer stated that he bought this land to include the branch within his boundary. However this may be, his purpose was served if the line of the land purchased by him ran with the branch, as he thereby secured access to both the water and the road. From the standpoint of Melton, he still owned the 59 acres, and it is in evidence that access to water was important. It is improbable that he would have cut himself off from water to any extent whatever. It seems reasonable to conclude that what the parties to these deeds intended was to make these three lines run with Mink Shoal Branch, but they used specific calls which, if laid down on the ground, would create a situation slightly different from that we may believe was intended. Courses running to and with streams are common, and a body of decisions has grown up around this question. *Brown* v. *Huger* (U. S.), 21 Howard 305, 16 L. Ed. 125, is the highest authority for the general proposition that where a line is run to a point on a non-navigable stream, and thence up or down the stream, such description of the line implies that the line shall follow the stream *ad medium filum aquae,* and, if support be needed, is upheld by *Jackson* v. *Louw,* 12 Johns (N. Y.) 252; *Buckley's Lessee* v. *Blackwell's Heirs,* 10 Ohio 508; *Carter* v. *C. & O. Rr. Co.,* 26 W. Va. 644, 53 Am. Rep. 116. See also, 9 Corpus Juris 187; 8 Am. Juris., 763. The proposition that a line running with a non-navigable stream runs with the center of the stream, unless the grant clearly excludes such construction, is upheld by *Hayes' Exr.* v. *Bowman,* 1 Rand. (Va.), 417; *Camden* v. *Creel,* 4 W. Va. 365; *State* v. *Mounts,* 108 W. Va. 53, 150 S. E. 513, and many other cases.

We do not understand that these propositions, as gen-

eral law, are seriously controverted, but it is said that they do not apply to the case at bar, and that they are not in harmony with the rule laid down in *Boggs* v. *Morrison*, 102 W. Va. 240, 135 S. E. 230. In that case, it was held that "the phrase 'up a run' does not necessarily mean following the water course literally with the meanders thereof; and especially where there is another expression in the deed which militates against it". When we examine the opinion, we find that the call in the deed referred to was as follows: "Beginning at a water birch on the bank of said river (Elk) and running thence up a run with a line of Silas C. Dean's land to a maple on top of the divide between Raccoon Creek and Mill Creek", and the court said: "The beginning corner is not described as being at or near the mouth of a run. It is described as being on the bank of Elk River, and it would have been natural to add 'near the mouth of a run', had that been the fact. Because it says thence up a run with a line of Silas C. Dean's land to a maple on top of the divide does not conclusively say it must follow the run from beginning to end. If that were the meaning, the maple on top of the divide could not be reached, for the run does not extend that far." The case is clearly distinguishable from the case at bar, and does not, in our judgment, indicate any deviation from the general rule announced in *Brown* v. *Hugar, supra*. *Halstead* v. *Aliff*, 78 W. Va. 480, 89 S. E. 721 was a case where from a pine and maple two poles west of the middle fork of Ugly, the call was for a protracted line with the general course of Ugly to a beginning point on the bank of Ugly, and it was therein held that a straight line was, under proper construction with reference to the facts, proven, but a reading of that case will disclose it to be clearly inapplicable to the case before us. We are of the opinion that the trial court did not err in holding that the division lines between the lands of the litigants herein should run with the center of Mink Shoal Branch.

Considering the case as a whole, we conclude that there was no error on the part of the trial court in entertaining

plaintiff's demurrer to the evidence, or its action in sustaining the same and entering judgment for the demurrant, the plaintiff below, and said judgment is affirmed.

*Affirmed.*

KENNA, JUDGE, concurring:

I agree with all the explicit statements in the Court's syllabi. If, however, those statements are to be construed as limiting the application of the principles dealt with to the premises upon which the statements are predicated, I do not agree. In other words, I think that the first syllabus point may be construed as limiting the right to demur to the defendant's evidence to a plaintiff who has made out a *prima facie* case. This, I believe, is an erroneous assumption indulged in by the Court in one of our previous cases cited hereafter, which springs from a lack of bringing into play the full scope of a demurrer to the evidence. Of course, if the plaintiff's demurrer reached only the evidence of the defendant, a *prima facie* case made out by the plaintiff's proof would be essential as a prerequisite. But plaintiff's demurrer to the evidence reaches all of the proof, his own included. It searches the entire record. The result of a demurrer to the evidence by either side which the trial court should pass upon invariably leads to a final disposition of the case on a question of law. Logically, it seems to me, both the affirmative and negative proof of demurrant are eliminated where there is a conflict. Permitting the demurrer to be withdrawn rests in the sound discretion of the *nisi prius* judge. When there is a doubtful inference to be drawn from the proof under consideration, then the case should be submitted to a jury.

This question has become quite involved both in this state and in Virginia. To elucidate, see Burks, Pleading and Practice. (2d Ed.), p. 441, par. 251; *Peabody Insurance Co.* v. *Wilson*, 29 W. Va. 528, 2 S. E. 888; *Johnson's Admr.* v. *Chesapeake & Ohio Railway Co.*, 91 Va. 171, 21 S. E. 238. See also, as altering the Virginia rule,

*Rector, etc. of the University of Virginia* v. *Snyder,* 100 Va. 567, 42 S. E. 337.

Subject to this amplification, I concur.